PATRICK R. MORIARTY, Plaintiff-Appellee, *v.* THE POLICE BOARD OF THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

(No. 55708;

First District—September 25, 1972.

Richard L. Curry, Corporation Counsel, of Chicago, (William R. Quinlan and Gayle F. Haglund, Assistant Corporation Counsel, of counsel,) for appellants.

Coghlan and Joyce, of Chicago, (Martin D. Coghlan, of counsel,) for appellee.

Mr. JUSTICE BURKE delivered the opinion of the court:

This is an appeal from a judgment reversing the findings and decision of the Police Board of the City of Chicago, dismissing the Plaintiff-Appellee, Patrick R. Moriarty, from the Chicago Police Department. On December 5, 1969, plaintiff, a patrolman, was charged with violating Rules 2, 6 and 14 of the Police Department. In a hearing the Police Board found that he violated Rules 2 and 6. Rule 2 relates to "action or conduct which impedes the department's efforts to achieve its goals, or brings discredit upon the department." Rule 6 relates to "disobedience of an order or directive, written or oral" and Rule 14 relates to "intoxication on or off duty." The Board specifically found that on the 25th of September, 1969, Moriarty violated Rule 2 by operating a motor vehicle in such a negligent manner as to cause it to collide with another motor vehicle, fatally injuring Mrs. William Rodgers, a passenger. The Board found that Moriarty violated Rule 2 in that he operated a motor vehicle while under the influence of an intoxicating beverage. Moriarty was also found guilty of violating Rule 6 by refusing to submit to a visual and breathalyzer test after being ordered to do so by a superior

officer. Regarding the charge of intoxication while on or off duty, the Board found that the evidence was insufficient. On the basis of the findings Moriarty was discharged from the Police Department.

On September 24, 1969, at approximately 8:30 P.M., Moriarty and his wife attended a wake. Between 10:30 P.M. and 11:00 P.M. a group including Moriarty, his wife and Harry Robinson went to a tavern where Moriarty and Robinson played pool and had several beers. Between 11:30 P.M. and 11:45 P.M. Moriarty drove his wife home, returning to the tavern at approximately 12:45 A.M. The two men had another beer and then decided to go to Robinson's home in Moriarty's car. They arrived at the Robinson residence at approximately 1:20 A.M. and remained there for two or three hours talking and playing pinochle. Robinson's mother participated in the conversation and during that time the men consumed sandwiches and soft drinks. At about 4:45 A.M. the two men drove in Moriarty's car to Moriarty's house at 5832 South Sacramento Avenue in Chicago. While driving in a northerly direction on the Dan Ryan Expressway, Moriarty was involved in an accident near 66th Street where three express lanes separate from two local lanes. The shortest route to Moriarty's house would be via the local lanes exiting at either 59th or 55th Street. In failing to enter a local lane at one of these exits, Moriarty would necessarily continue to 43rd Street to exit the expressway.

The three occurrence witnesses to testify were Moriarty, Robinson and Phillip Reiman, a truck driver. Reiman testified that he was driving a truck in a northerly direction in the left hand lane of the two local lanes of the Dan Ryan Expressway near 66th Street. He first observed the Volkswagen which was later struck by Moriarty at a point approximately three-quarters of a mile south of the scene of the accident. The speed of the Volkswagen was about 40 miles per hour and it was traveling in the right-hand lane of the two local lanes. Reiman first observed Moriarty's car as it neared the point where the lanes separated. He testified that Moriarty was traveling in a northerly direction in the second or center lane of the three express lanes at a speed of approximately 60 miles per hour. According to this witness, Moriarty's vehicle suddenly turned at almost a 90 degree angle and proceeded in an easterly direction across the expressway. Reiman stated that Moriarty's car first struck the curbing of the lane separator and then went over it, coming down striking the Volkswagen and pushing it into a ramp wall. Moriarty's car then proceeded northwesterly across the expressway striking a guard rail and light post and then continuing back across the three express lanes finally stopping two or three blocks north of the original point of impact with the Volkswagen. It was Reiman's opinion that Moriarty's

vehicle could have been out of control or could have been wheeled sharply to the right by the driver.

It was Robinson's opinion that the accident resulted from a blowout and that Moriarty was not under the influence of alcohol at the time. Moriarty testified that while proceeding in a northerly direction on the Dan Ryan Expressway at a speed of approximately 50 miles per hour, he "felt the right tire go out"; that the car lurched and that as it hit the concrete median strip he lost control and hit the Volkswagen. When Moriarty returned to the scene of the collision he presented himself to an Officer Williams. From the scene of the accident, Moriarty was taken to St. Bernard's Hospital where a Lieutenant Walsh commented that Robinson and Moriarty looked like they had been drinking. From the hospital, Moriarty and Robinson were taken to the Englewood District Police Station to complete the investigation. There, a statement containing the required constitutional warnings was read to Moriarty. After consulting his attorney, Moriarty refused to answer any substantive questions and refused to take the breathalyzer and visual tests. Officer Williams testified that he was of the opinion that Moriarty was under the influence of alcohol at the time of the accident. An Officer Hughes, who first observed Moriarty at the police station, stated that Moriarty's eyes were bloodshot and that there was a slight odor of alcohol on his breath. Hughes, however, had no opinion as to whether Moriarty was under the influence of alcohol. Walsh was of the opinion that Moriarty was under the influence of alcohol. Officer Huber, the evidence technician assigned to administer the breathalyzer test, stated that Moriarty had a slight odor of alcohol but could not testify as to whether Moriarty was under the influence of alcohol or not. It was Sergeant Schoenbein's opinion that Moriarty was under the influence of alcohol to a degree. This officer first observed Moriarty at the hospital. Moriarty denied being under the influence of alcohol.

The front tire of Moriarty's vehicle was received as an exhibit. James Baker, a Traffic Engineer and Director of Research and Development of the Traffic Institute of Northwestern University, testified that he examined the tire on October 27, 1969, which he described as having a five inch hole with several small superficial cuts. There were two dents on the rim but the tire on it was not loose. It was Baker's opinion as an expert that the five inch hole was caused by the tire striking a substantial object. He testified that the break in the tire and the condition of its rim indicated that it was placed under great pressure but that the general characteristics of a blowout were not present. Baker stated that when a passenger vehicle traveling at a speed of 60 miles per hour sustains a blow-out, the wheel will begin to vibrate, thereby exerting a drag on

the side of the car tending to swerve the car gradually from its path. It was his opinion that this gradual deviation would occur within the reaction time of the driver.

The court found that the findings of the Police Board as to Moriarty's negligence and driving while under the influence of alcohol were against the manifest weight of the evidence. The court reversed the findings relating to Moriarty's alleged disobedience, because he was not advised in accordance with the provisions of Chapter 24, Section 10—1—18.1 of the Illinois Revised Statutes.

■■ A reviewing court will not disturb the factual findings of an administrative agency unless the findings are clearly against the manifest weight of the evidence. (*Davern v. Civil Service Com.*, 47 Ill.2d 469, 269 N.E.2d 713.) Where the resolution of factual issues is dependent upon the credibility of the witnesses, the courts will not, on review, reweigh the evidence even though an opposite conclusion might be reasonable. *DeGrazio v. Civil Service Com.*, 31 Ill.2d 482, 202 N.E.2d 522; *Zinser v. Board of Fire and Police Commrs.*, 28 Ill.App.2d 435, 172 N.E.2d 33.

■■ The issues of whether Moriarty operated his vehicle in a negligent manner and while under the influence of alcohol were questions of fact dependent on the credibility of the witnesses and the weight to be accorded their testimony. *Patarozzi v. Prairie States Oil & Grease Co.*, 71 Ill.App.2d 155, 218 N.E.2d 113; *Dailey v. Hill*, 99 Ill.App.2d 474, 241 N.E.2d 683.

■■ While the testimony was conflicting the findings of the Board are not against the manifest weight of the evidence. The Circuit Court erred in disturbing the Board's findings on the issue of negligence and the issue of whether Moriarty was under the influence of alcohol at the time of the occurrence.

■■ Because a single valid finding is sufficient to constitute the basis for entering an order of discharge we find it unnecessary to consider the other contentions presented. (*DeGrazio v. Civil Service Com.*, 31 Ill.2d 482, 202 N.E.2d 522.) Having determined that the findings of the Police Board are not contrary to the manifest weight of the evidence, the judgment is reversed and the cause is remanded with directions to enter a judgment restoring the decision of The Chicago Police Board discharging Patrick R. Moriarty from the position of Patrolman of The Chicago Police Department.

Judgment reversed and cause remanded with directions.

GOLDBERG, P. J., and LYONS, J., concur.