OLIVER GADBERRY, Plaintiff-Appellant, *v.* CHICAGO POLICE DEPARTMENT *et al.*, Defendants-Appellees.

First District (5th Division)   No. 62270

Opinion filed June 25, 1976.

Melvin Gaines, of Chicago, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Roseann Oliver, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Plaintiff was found guilty after a hearing before defendant of violating certain police department regulations and was suspended from the force for a period of 90 days. Plaintiff filed a complaint seeking review of this administrative action. Upon affirmance by the circuit court of defendant's decision, he appealed to this court. He contends that the findings and decision of defendant were against the manifest weight of the evidence and that he was not afforded a full and fair hearing on his complaint seeking administrative review.

We will limit our discussion of the facts to those relating to the charges filed against plaintiff relevant to our disposition of this appeal.

On May 22, 1972, the superintendent of police filed charges with defendant alleging that plaintiff had violated Rule 2 of the department in that he had "in his possession stolen property which he sold to one T. Moore" and Rule 20 of the department in that "he had in his possession stolen property and failed to report to the department the circumstances under which it was obtained."* An amended charge that plaintiff had

---

* Rule 2 of the Chicago Police Department allows the imposition of sanctions for "Any action or conduct which impedes the Department's efforts to achieve its goals, or brings discredit upon the Department."

Rule 20 of the Chicago Police Department allows the imposition of sanctions for "Failure to report to the Department any information concerning any crime or other unlawful action."

failed to obey department orders concerning other employment, occupation or profession (Rule 22) was also filed.

At the hearing before defendant, Chicago Police Officer Theopsy Moore testified that on May 3, 1972, at approximately 2:30 p.m. he had just parked his truck at a gas station at 16th Street and Kildare Avenue in Chicago. The owner of the station informed him that a man was on the premises who wanted to sell two leather coats. Moore and a friend of his, Henry Riggins, accompanied the man to a room inside the station where they were shown the coats. Moore bought them for $45, having borrowed $30 from Riggins. He estimated that they were worth $250. Plaintiff informed Moore that he needed money to bail his brother out of jail. Plaintiff also told him that he did not like police officers.

At the six o'clock roll call that evening, Moore's partner, Officer John Gregory, told him that his house had been burglarized, and that, among other things, his two leather coats had been stolen. Gregory identified the coats which Moore had purchased as the ones that had been stolen. Apparently Moore and Gregory returned to the gas station on several occasions in an attempt to discover the identity of the seller. They learned that the seller's nickname was "Speed." Officer Moore stated that he knew a "Speed" but that he was not the seller. Later Gregory told Moore that he knew of a police officer assigned to the Twelfth District whose nickname was "Speed." They gave this information to detectives at Fifth Area Burglary. Moore was shown a book containing photos of officers assigned to the Twelfth District. From these photos he identified one of plaintiff as depicting the man who sold him the coats. On May 10 Moore identified plaintiff at Twelfth District Headquarters.

Moore could describe the clothes worn by the man who sold him the coats but was uncertain as to whether he wore his hair in a natural.

Burglary detectives corroborated Moore's testimony regarding identification of plaintiff. They further testified that at a lineup conducted on May 10 Riggins identified plaintiff as the man who sold Moore the coats.

Riggins testified for plaintiff that he had been present at the gas station at 16th Street and Kildare Avenue shortly after 2:30 p.m. on May 3, 1972. He saw Officer Moore and accompanied him and a man who was selling leather coats into the back room of the station. He loaned Moore $30 to purchase the coats. Riggins admitted that he had identified plaintiff at a lineup as the man selling the costs. He testified, however, that by the next day he realized he was mistaken and went with Moore to the office of the State's Attorney in the Criminal Courts Building to correct his error. Moreover, Riggins stated that he was acquainted with three of the five men in the lineup. Riggins testified that while at the State's Attorney's office he heard Moore say that plaintiff was not the man who sold him the

coats. Riggins testified that he was positive that plaintiff was not the seller. The man who was selling the coats had close cut hair; plaintiff wore his hair in a natural. He further testified that he agreed to take a polygraph test on Michigan Avenue and that after taking the test the operator told him that he was responding "very good"; he was also asked if he would take a truth serum test. He replied that he would take everything because he knew plaintiff wasn't the man.

John Hudson, the owner of the gas station, testified for plaintiff that on the afternoon of May 3, 1972, a man approached him at his place of business and offered to sell him two leather coats. This man was not plaintiff. Hudson did not want to buy coats but informed Moore of the man's presence because he thought the officer might be interested in purchasing them. Hudson was shown the same lineup as Riggins. He did not pick out plaintiff. A mechanic employed by Hudson also testified that the man selling the coats was not plaintiff.

Plaintiff called employees of the Tilton School who testified that they had seen plaintiff there at various times on May 3, 1972. A teacher saw him at approximately 2:20 p.m. and 3:15 p.m., and a cook at 1:30 p.m. and approximately 3:05 p.m. A custodian testified that he observed plaintiff at noon and on and off between 2:15 and 3:05 p.m. when both had duties to perform in the same area of the building.

Plaintiff testified in his own behalf that on May 3, 1972, he had signed in for duty as a security guard at the school at 8 a.m.; that he remained at the school all day; and that he did not check out until after 3 p.m.

Chicago Board of Education time sheets were introduced which indicated that plaintiff checked in for work as a security guard at the Tilton School on May 3, 1972, at 8 a.m. but failed to sign out.

During the hearing it was revealed that a search of plaintiff's home produced none of the other items taken from Gregory and that plaintiff had been found not guilty of criminal charges arising out of this incident.

Defendant found:

> "Respondent as charged herein, contrary to the Rules and Regulations of the Department of Police is guilty of violating Rule 2. 'Any action or conduct which impedes the Department's efforts to achieve its goals, or brings discredit upon the Department,' in that the conduct of the respondent as set forth in finding 6 hereof is not that which the department expects from a reasonable, prudent, diligent and cautious officer;
>
> Respondent as charged herein, contrary to the Rules and Regulations of the Department of Police is guilty of violating Rule 20, 'Failure to report promptly to the Department any information concerning any crime or other unlawful action,' in that he had in his possession property that had been reported stolen and failed to

> report to the department the circumstances under which it was obtained."

There was no finding by defendant as to the charge of selling property to Moore or to the charge of disobeying orders as to employment.

The circuit court sustained defendant's finding as to failing to report information concerning a crime.

OPINION

It is plaintiff's primary contention that defendant's order finding he had violated departmental Rules 2 and 20 was contrary to the manifest weight of the evidence. Specifically, he points to contradictory identification testimony and the implausible nature of Officer Moore's account of the events surrounding his purchase of the coats. Defendant argues that we cannot consider these matters since they involve questions of fact about which its findings are presumed to be prima facie correct. See Ill. Rev. Stat. 1973, ch. 110, par. 274.

This precise issue was recently considered in the case of *Daniels v. Police Board* (1st Dist. 1976), 37 Ill. App. 3d 1018, 1022, wherein it was held:

> "While it is true the findings are presumed prima facie correct, they must be supported by the manifest weight of the evidence, and it is to determine this question that this court reviews the proceedings below. (*Fantozzi v. Board of Fire and Police Commissioners* (2d Dist. 1962), 35 Ill. App. 2d 248, 257, 182 N.E.2d 577, *aff'd*, 27 Ill. 2d 357, 189 N.E.2d 275; *Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471, 269 N.E.2d 713, *cert. denied*, 403 U.S. 918, 29 L. Ed. 26 695, 91 S. Ct. 2229.) The purpose of this review is not to reweigh the evidence (*Moriarty v. Police Board* (1st Dist. 1972), 7 Ill. App. 3d 978, 982, 289 N.E.2d 32), but to determine if the evidence as weighed by the trier of fact supports the findings.
>
> It is in this role that the reviewing court may examine the sufficiency of the identification testimony, not to redetermine credibility or reweigh the likelihood of plaintiffs' alibis, but rather to examine whether enough evidence of correct identification exists on record to support the findings of violation."

While noting that it is hardly the typical case where the evidence the trier of fact chose to believe was so fatally flawed that a reversal of the findings based upon it as being against the manifest weight of the evidence was required, the court in *Daniels* did reverse the decision of the Board on the ground that it was based on improbable identification testimony.

We believe that in the instant case, as in *Daniels*, the decision of defendant must be overturned. Defendant's order finds support solely in the testimony of Moore. His identification of plaintiff was placed in

controversy by the testimony of three witnesses, Riggins, Hudson and the mechanic, all of whom had a good opportunity to observe the man who was selling the coats and all of whom testified that this man was not plaintiff. Furthermore, Moore's testimony was, in part, discredited by that of Riggins to the effect that the officer on at least one occasion expressed doubts as to his identification of plaintiff. In viewing this testimony we note that Riggins (1) was a friend of Moore of long standing and (2) was not previously acquainted with plaintiff and thus had no apparent reason to testify in support of his case. Finally, we note the existence of the positive and unimpeached testimony of three school employees that plaintiff was patrolling the Tilton School during the time the sale of the coats to Moore took place. We believe in light of this record the findings of defendant cannot stand.

Due to our holding that the findings of defendant were against the manifest weight of the evidence, we need not discuss plaintiff's contention regarding the nature of the hearing he was afforded on administrative review.

For the foregoing reasons we reverse defendant's findings and the affirmance of those findings by the circuit court and remand with directions that the court enter such orders as are consistent with the views expressed herein.

Reversed and remanded with directions.

LORENZ, P. J., and BARRETT, J., concur.