ROMEO KING, Plaintiff-Appellant, *v.* THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)   No. 77-1054

Opinion filed May 12, 1978.

Romeo King, of Chicago, for appellant, *pro se.*

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Steven G. Revethis, Assistant Corporation Counsel, of counsel), for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

In an action brought under the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*), the trial court affirmed a decision of the Chicago Police Board (Board) discharging plaintiff. On appeal, his sole contention is that the findings of the Board were against the manifest weight of the evidence.

Plaintiff, a police officer, was charged with violations of Chicago Police Department (Department) Rules 2 and 14. Defendants, however, have agreed on oral argument here that the evidence did not establish any violation of Rule 14. Moreover, in their briefs, they do not support (nor

does the record) an alleged Rule 2 violation that plaintiff took unauthorized possession of certain personal property of Eileen Curry. Remaining are three charges that plaintiff violated Rule 2—"Any action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department"—by operating the illicit business of prostitution in the month of March 1974, by receiving on or about March 27, 1974, more than $1,000 from Sandy Lucido, which plaintiff knew was earned in whole or in part from the practice of prostitution, and by arranging on or about March 9 a situation in which Sandy Lucido could and did practice prostitution.

Certain of the facts are undisputed. In August 1973, plaintiff and another police officer (Willie Johnson) learned through an informant that a hotel and a pub located on the near north side of the city were being used with the knowledge of the owners for transactions in narcotics and prostitution. To identify those involved and to gather evidence of their activities, plaintiff and Johnson submitted a plan to the Department which called for them to infiltrate those operations. In the plan, as approved by the Department and the State's Attorney, they were to act the part of pimps and were authorized to employ prostitutes and to purchase narcotics. The Department obtained the services of Eileen Curry, a one-time madame, to instruct them in their roles as pimps and to introduce them to prostitutes who could supply them with information. During their period of instruction, which began on December 27, 1973, Curry was out on bond pending the outcome of an appeal from a pandering conviction which ultimately was lost, resulting in her incarceration on March 7, 1974. Prior thereto, she had introduced the officers to Carmelita Vasquez, who had previously worked for her as a prostitute. Vasquez agreed to participate in the operation as plaintiff's "old lady," a role which entailed managing the other prostitutes. Curry also gave plaintiff and Johnson her book of customers and introduced the officers to Inez Preston, who agreed to answer the telephone and arrange meetings between customers and prostitutes.

Plaintiff and Vasquez engaged Sandy Lucido to work as a prostitute for them and, between March 8 and 27 she testified that she gave them approximately $1,000 earned by her for performing acts of prostitution. On March 17, Vasquez introduced plaintiff to Kathy and Royal Garrison, and plaintiff told the latter he would pay a minimum of $50 per customer to each prostitute Royal could get to work for him. On March 18, Royal introduced plaintiff and Vasquez to Marion Swartz, who was informed by plaintiff that her earnings were to be split between them and was told by Vasquez to go to a motel where the customers would be sent to her. When Swartz returned at the end of that day with the money she earned, plaintiff instructed Vasquez to collect their share.

Curry testified that plaintiff and Vasquez visited her on March 12, at the correctional center where she was confined, and told her they were going to continue the prostitute ring while she was in jail. She also stated that plaintiff informed her that he had taught his wife how to handle the telephone to arrange meetings between customers and prostitutes. Curry also testified that on March 22, plaintiff and Vasquez again visited her at the correctional center and, while there, plaintiff told her the prostitute ring was operational.

Plaintiff testified that he submitted and obtained approval of the operational plan in which he and Johnson were to assume the roles of pimps; that they were authorized by the Department to engage in the operation; that the Department arranged for Bunny Curry, a known prostitute, to teach them the mannerisms of a pimp; that the Department arranged for Carmelita Vasquez, also known as a prostitute, to assist them in their investigation; that Sandy Lucido was used as a prostitute in the operation but that he did not receive "monies totaling more than $1,000" from her on or about March 27, 1974; that while he knew Kathy Garrison and Royal Garrison, he was never given money by them; that he did not tell Inez Preston that he and Vasquez were continuing Curry's prostitution business; and that he never received any money from prostitutes after March 7, 1974.

Plaintiff was found guilty by the Board of all charged violations—four of Rule 2 and two of Rule 14 and was ordered discharged. The trial court affirmed the Board's decision to discharge plaintiff.

OPINION

■ ■ ■  We initially note that plaintiff has failed to file either an abstract of or excerpts from the record, as required by Supreme Court Rule 342 (Ill. Rev. Stat. 1977, ch. 110A, par. 342), nor has he sought to be excused from this requirement, as he could have under section (i) of the Rule (Ill. Rev. Stat. 1977, ch. 110A, par. 342(i)). The furnishing of one or the other is the duty of the appellant, and the abstract or excerpts must contain everything necessary to enable the reviewing court to decide the issues presented for review. (*Reed v. Hoffman* (1977), 48 Ill. App. 3d 815, 363 N.E.2d 140; *Heritage Shelter Care Home, Inc. v. Miller* (1975), 31 Ill. App. 3d 700, 334 N.E.2d 355.) The abstract or excerpts have been considered in legal effect to be the appellant's pleadings (*Shaw v. Kronst* (1973), 9 Ill. App. 3d 807, 293 N.E.2d 153; *Davis v. Davis* (1970), 128 Ill. App. 2d 427, 262 N.E.2d 788; *Denenberg v. Prudence Mutual Casualty Co.* (1970), 120 Ill. App. 2d 68, 256 N.E.2d 71), and where there has been an unexcused failure to file one or the other, a dismissal of the appeal has been deemed proper (*Lill Coal Co. v. Bellario* (1975), 30 Ill. App. 3d 384, 332 N.E.2d 485; *Plowman v. Edgington* (1974), 21 Ill. App. 3d 410, 315

N.E.2d 338; *Frederick Chusid & Co. v. Collins Tuttle & Co.* (1973), 10 Ill. App. 3d 818, 295 N.E.2d 74; *Denenberg v. Prudence Mutual Casualty Co.*).

As the authors of the Historical and Practice Notes to Supreme Court Rule 342 point out:

> "Even though the entire record on appeal is available for perusal by the reviewing court it is impossible in a system where multiple judge panels sit on review of cases to rely on the judges' access to the record to produce familiarity with the issues raised by the record on appeal. *Without accurate and complete excerpts or abstracts, appellate review simply will not work effectively.*" (Emphasis added.) Ill. Ann. Stat., ch. 110A, par. 342 Historical and Practice Notes, at 172 (Smith-Hurd 1976).

In the present case, plaintiff has merely listed in his brief references to 27 pages of the record which support his position only. However, because a proper consideration of whether the Board's findings were against the manifest weight of the evidence, as plaintiff contends, necessitates a thorough search of the entire 708-page record, his limited page references fall far short of meeting the requirement of Supreme Court Rule 342 that an appellant provide this court with the substance of all material testimony. A dismissal of this appeal would be proper on this ground alone (*Lill Coal Co. v. Bellario; Plowman v. Edgington*); however, we feel that, in the interests of justice, the merits here should be examined in view of the admitted lack of support for the Board's findings as to Rule 14 violations and as to one of the charged violations of Rule 2; namely, that plaintiff took unauthorized possession of certain personal property of Eileen Curry.

■■■ In disciplinary proceedings against a police officer, a single valid finding of a violation of departmental rules will authorize dismissal. (*Noro v. Police Board* (1977), 47 Ill. App. 3d 872, 365 N.E.2d 419; *Thanasouras v. Police Board* (1975), 33 Ill. App. 3d 1012, 339 N.E.2d 504, *cert. denied* (1976), 429 U.S. 851, 50 L. Ed. 2d 125, 97 S. Ct. 141; *Moriarty v. Police Board* (1972), 7 Ill. App. 3d 978, 289 N.E.2d 32.) On review, the scope of our inquiry, as it was in the trial court, is limited to ascertaining whether the agency's findings were contrary to the manifest weight of the evidence (*Kerr v. Police Board* (1974), 59 Ill. 2d 140, 319 N.E.2d 478; *Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229), and an agency's findings may not be so adjudged unless, from the record, it appears that the opposite conclusion is clearly evident (*Goslin v. Zoning Board of Appeals* (1976), 40 Ill. App. 3d 40, 351 N.E.2d 299; *Bock v. Long* (1972), 3 Ill. App. 3d 691, 279 N.E.2d 464). Moreover, the findings and

conclusions of the Board on questions of fact are to be considered prima facie true and correct. Ill. Rev. Stat. 1977, ch. 110, par. 274.

It is the position of plaintiff that his part in the undercover investigation was not terminated until March 26, 1974, and because the findings of the Board were based on conduct alleged to have occurred in March 1974, he argues that the findings should be reversed since his actions during the month of March were with the authority of the Department. Defendants, however, contend that plaintiff's role in the undercover investigation was ended on March 11, 1974, and that his conduct subsequent thereto was without departmental authority.

The evidence is conflicting as to when plaintiff's role in the investigation ended. Sergeant Powers, although testifying that the investigation closed on March 26, 1974, stated that he had earlier told plaintiff his part in it would end in early March. Lieutenant Ward testified that he informed plaintiff his role in the investigation would be terminated on March 11. It appears, however, that plaintiff was told to be present on March 15 to observe a raid on the pub involved in the investigation, and that he was also told to return to that pub a week later to determine the effects of the raid. Ward testified that the raid had nothing to do with plaintiff's role in the investigation, and there appears no direct contrary evidence. In substance, then, it is the position of defendants that plaintiff had no authority under the operational plan to conduct or participate in the business of prostitution after March 11, and when he did so after that date, it was for his own benefit and in violation of Rule 2.

From the testimony, it is apparent that after March 11, 1974, plaintiff was engaged in the business of prostitution during that month. On March 12 and 22, he met with Curry at the correctional center and informed her that he and Vasquez would continue the prostitution ring while she was in jail; that Sandy Lucido testified she worked as a prostitute for plaintiff and Vasquez during March and gave them more than $1,000 between March 8 and March 27 which was earned for performing acts of prostitution (plaintiff claims the amount was only $550); that plaintiff and Vasquez met with Royal and Kathy Garrison on March 17 to arrange for other prostitutes to work for them; that Royal introduced them to Marion Swartz, who went to work for them on March 18, and she split her earnings of that day with plaintiff and Vasquez.

■■ A reviewing court will neither reweigh the evidence nor determine credibility of the witnesses. (*Peterson v. Board of Trustees* (1973), 54 Ill. 2d 260, 296 N.E.2d 721; *Moriarty v. Police Board.*) Thus, the mere existence of conflicting testimony is not a sufficient basis for reversing an administrative agency's decision as being against the manifest weight of the evidence. *Flynn v. Board of Fire & Police Commissioners* (1975), 33

Ill. App. 3d 394, 401, 342 N.E.2d 298, 303; *Ceja v. State Police Merit Board* (1973), 12 Ill. App. 3d 52, 58, 298 N.E.2d 378, 382.

■■ It is in the light of these rules that we have examined the record, and we conclude that the finding of the Board that plaintiff was engaged in the illicit business of prostitution during the month of March 1974 was not against the manifest weight of the evidence. We hold also that the Board's finding relative to plaintiff receiving on or about March 27, 1974, more than $1,000 from Sandy Lucido (which he knew was earned in prostitution) was not against the manifest weight of the evidence. This finding is supported by Lucido's testimony that plaintiff asked her to work for him as a prostitute and that from March 8 to March 27 she worked practically every day, except Saturdays and Sundays, at locations either arranged by or known to plaintiff and, at the end of each working day, she paid half of her earnings to plaintiff or to Vasquez (who was working for plaintiff), a total during the period of $1,000 to $1,200. We hold, however, that it was not a Rule 2 violation for plaintiff to have arranged on March 9, 1974, "a situation in which Sandy Lucido could and did practice prostitution," as it was within plaintiff's authority prior to March 11, 1974, to employ prostitutes.

Because a single valid Board finding of a violation of departmental rules will authorize dismissal (*Noro v. Police Board; Thanasouras v. Police Board; Moriarty v. Police Board*), we affirm the judgment of the trial court sustaining the Board's decision discharging plaintiff.

Affirmed.

LORENZ and WILSON, JJ., concur.