REVANNA SKINDER, Plaintiff-Appellant, *v.* LICENSE APPEAL COMMISSION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 77-1519

Opinion filed December 27, 1978.

McNAMARA, J., dissenting.

Sophia H. Hall, of Chicago, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Henry Phillip Gruss, Assistant Corporation Counsel, of counsel), for appellees.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

The plaintiff, Revanna Skinder, owner of a tavern in Chicago, is seeking appellate review (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*) of an adverse trial court decision in a proceeding to review decisions of the local Liquor Control Commissioner (the Commissioner) and the License Appeal Commission, which revoked her liquor license.

Two Chicago police officers testified before the Commissioner. Officer Robert Walsh testified that, accompanied by three other officers, he investigated a complaint about male go-go dancers at the plaintiff's tavern as well as whether there was an admission policy barring males which might be a civil rights violation. He stated that he entered the premises freely, and that inside were a bar, tables, pinball games, and a stage. Walsh said that 50 or 60 people, mostly women, were there, and that the male go-go dancers were performing 3 to 4 feet away from the audience, which Officer Walsh said was "loud."

Officer Walsh testified that the male go-go dancer he later arrested was clad in a G-string, and gyrated on the stage for about 15 minutes, moving his crotch area, arms, and lower extremities back and forth toward the people at the bar. The dancer then began to dance on the bar near Officer Walsh, and, as women at the bar reached for him, he danced and gyrated about in front of one of the women who was at the bar with her husband. When the dancer bent down and kissed her, she reached up and put her hand into his G-string. At this point the officers made their arrests. Officer Walsh arrested the dancer for lewd conduct and being the inmate of a disorderly house, the plaintiff for keeping a disorderly house, and the patron who reached into the dancer's G-string for being the inmate of a disorderly house.

On cross-examination, Officer Walsh testified that he was standing about 3 feet from the woman patron, who was seated next to her husband, when she reached into the male dancer's G-string. He stated that he saw no money in her hand before she reached for the dancer, and that the dancer's crotch area was covered at all times.

Officer Richard Zielinski also testified before the Commissioner. Although his testimony tended to corroborate Officer Walsh's statements, it departed from Officer Walsh's in some respects. Officer Zielinski described the male dancer as nude except for the G-string, and said the dancer walked along the bar exhibiting his body to the women there. The dancer stopped before one woman, and crouched down with his G-string about a foot from her face. The woman moved her head forward, and then back, and then put her hand into the G-string.

On cross-examination, Officer Zielinski admitted that he had appeared in court on this matter, and that in a pretrial conversation he had

said that what he observed occurs continually in restaurants which feature female belly dancers. Officer Zielinski also testified that during the same conversation he said he did not see the woman patron's hand touch the dancer's genital area, and that the dancer's genital area was covered throughout his performance. Officer Zielinski confirmed that the woman patron's husband was sitting next to her at the bar. He stated that the dancer's G-string was essentially an athletic supporter with a string around it, and that he did not know if the woman had any money in her hand.

Also appearing before the Commissioner were the plaintiff-licensee, and three patrons, including the woman who placed her hand in the dancer's G-string and was arrested. This woman testified that she entered the establishment with her husband and two women friends. When the dancer came across the bar, her husband handed her a dollar. As she reached up to stick the bill in the side of the dancer's bikini, she was arrested. She described the dancer's outfit as a long, black vest with fringes and black leather bikini underpants. She denied ever touching the dancer's genitals or placing her hand in his pants, and said that he never removed his pants or exposed his genitals. She described his dancing as "disco, modern dancing, like go-go dancing," in which the dancer moved his arms, legs, and body. She also testified that the State's Attorney dropped all charges against her, the dancer and the plaintiff-licensee. On cross-examination, she stated that although a G-string is more revealing than bikini pants, the dancer in her opinion was wearing bikini pants. She denied that she touched the dancer, and also denied that the dancer kissed or touched her.

One of the arrested woman's friends, who said she was sitting next to her, described the dancer as doing "go-go dancing"—moving his whole body. She corroborated her friend's testimony about the dancer's actions, the lack of interaction between her friend and the dancer, and her friend's attempt to put a dollar into his clothing. She said her friend could not even reach the dancer's pants because of his height. The arrested woman's other friend then gave essentially the same version of the incident, describing the dancer's actions as "modern dancing," and his clothing as "panties."

The plaintiff-licensee testified that the male dancer "was dressed very exotically with * * * a very shiny black costume with fringes and * * * black leather bikinis." She said he never removed those bikinis or acted in a lewd manner, and added that she did not observe any of the arrested patron's alleged actions.

The Commissioner found that, through her agent the male dancer, the plaintiff-licensee "knowingly committed acts of lewd conduct on the licensed premises," in violation of chapter 192, section 192-7 of the Chicago Municipal Code. Based on this finding, the Commissioner issued

an order revoking the liquor license. The plaintiff filed a petition for a trial before the License Appeal Commission, but after a hearing and review of the record, the original order of revocation was found to be "supported by substantial evidence" and the motion was denied. The plaintiff-licensee then filed a complaint for judicial review of the administrative proceedings; the circuit court affirmed the orders of the local Liquor Control Commissioner and the License Appeal Commission. This appeal followed.

At issue here is whether the findings of the local Liquor Control Commissioner were against the manifest weight of the evidence. Because we conclude that those findings were not supported by substantial evidence, we reverse the decision of the trial court affirming the revocation of the plaintiff-licensee's license, and vacate the orders revoking her liquor license. In view of this determination, it is unnecessary to consider the plaintiff's other objections to the proceedings instituted against her.

Chicago's Municipal Code provides:

"Any person who shall commit any indecent, lewd or filthy act in any public place in the city; * * * who shall make any obscene gesture in the presence of other persons; or, who shall make any overture of lewdness tending to pervert the morals of any person, upon or in the public ways or other public places or in any public conveyance in the city, is hereby declared to be a common nuisance and shall be fined not to exceed two hundred dollars for each offense." (Chicago, Ill., Mun. Code 1977, ch. 192, par. 192-97.)

The evidence presented to the Liquor License Control Commissioner in this case was insufficient to support a finding of a violation of this ordinance. It is undisputed that the male dancer put on a vigorous performance—gyrating, moving his entire body along the bar close to the female patrons. Yet the female patrons merely characterized his actions as "modern" or "disco" dancing, and even one of the arresting officers said that what he observed was common among female belly dancers. The other arresting officer, Robert Walsh, in describing the dancer's movements only stated that he was gyrating about the stage and moving his crotch area and his lower extremities back and forth toward the people sitting at the bar. It is also undisputed that while the dancer wore a rather scanty outfit, he never removed his G-string or bikini, or exposed himself to anyone. The testimony as to whether the woman patron actually placed her hand inside his bikini, or only attempted to do so, or whether she was merely attempting to give him a tip with a dollar bill in a manner common to audiences in establishments presenting belly dancers is conflicting. Even if the testimony that the woman placed her hand in the dancer's bikini is believed, there still is no evidence as to what part of

the bikini she touched except for Officer Zielinski's testimony that she did not touch the dancer's genital area.

In short, the record confirms that the male dancer was throwing himself into his performance and eliciting some response from an appreciative, and predominately female, audience. But there is no testimony even suggesting that he removed any part of his clothing, or simulated any sexual act, or even that he danced in a fashion any more sexually suggestive than do dancers in many nightclubs or discotheques. Indeed, if anything, the record indicates that his gyrating movements while dancing were more similar to common and accepted "disco" or "go-go" or "modern" dancing, than to any other form of dance. And this sort of record does not justify a finding that his actions violated the ordinance in question; otherwise, many members of reputable dance companies presenting theatrical performances might well find themselves in violation of the law.

From the record, then, we can conclude that the dancer was doing his job, and that the police officers did not approve of whatever he was doing. But the question of exactly what he was doing that violated the ordinance remains unclear and a reviewing court cannot base a decision on conjecture. The record when viewed most favorably to the city does not contain evidence establishing a violation of the ordinance. Because there is insufficient evidence to support the findings of the local Liquor Control Commissioner (*Easy Life Club, Inc. v. License Appeal Com.* (1974), 18 Ill. App. 3d 879, 310 N.E.2d 705; *Daley v. Jack's Tivoli Liquor Lounge, Inc.* (1969), 118 Ill. App. 2d 264, 277, 254 N.E.2d 814), his decision must be reversed as against the manifest weight of the evidence. Accordingly, the judgment of the circuit court is reversed.

Judgment reversed.

JIGANTI, J., concurs.

Mr. JUSTICE McNAMARA dissenting:

I respectfully dissent. It is undisputed that upon review of a decision made by an administrative agency, courts are not authorized to reweigh the evidence or to make an independent determination of facts, but are limited to a consideration of the record to determine whether the findings and conclusions of the agency are contrary to the manifest weight of the evidence. *Moriarty v. Police Board* (1972), 7 Ill. App. 3d 978, 289 N.E.2d 32.

In the present case, the commissioner had before him testimony that a male employee of the licensed premises clad only in a G-string was dancing on the bar. The dance was one in which the dancer moved his

pelvic area and his lower extremities back and forth towards the patrons who were seated at the bar. As the dancer was performing his gyrations in front of a woman patron, he bent down and kissed her. The dancer lowered his body so that his G-string was right in front of the patron's face. The patron then moved back and placed her hand into his G-string. The foregoing substantial evidence supports the commissioner's determination that plaintiff's agent violated the ordinance. The commission's decision was not contrary to the manifest weight of the evidence. Accordingly, I would affirm the judgment of the circuit court of Cook County.