JERRY McHENRY, Plaintiff-Appellee, v. THE CITY OF EAST ST. LOUIS *et al.*, Defendants-Appellants (Charles Wren, Chief of Police for the City of East St. Louis, Defendant).

Fifth District   No. 5—89—0343

Opinion filed March 21, 1991.

Charles L. Wiest, Jr., of Vickers, Moore & Wiest, of St. Louis, Missouri, for appellant City of East St. Louis.

Robert L. Merriwether, Jr., of East St. Louis, for other appellants.

James J. Gomric, of Washington, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

East St. Louis police officer Jerry McHenry (McHenry) sought review in the St. Clair County circuit court of the City of East St. Louis' Board of Fire and Police Commissioners' (the Board) decision to remove him from the city's police department. On April 26, 1989, the trial court filed its order overturning the Board's decision and directed McHenry's reinstatement. The court concluded that the Board's findings were against the manifest weight of the evidence and that the delay in concluding the proceedings in the case deprived McHenry of his rights to due process of law. The City of East St. Louis appeals.

On September 6, 1984, the City of East St. Louis' Police Chief Charles Wren (Chief Wren) filed the following charges against McHenry:

"1. During the period between March 1984 and August 16, 1984, McHenry permitted and allowed Cornelia Conley, a female minor age 14, to reside at his residence located at 553 Gray Boulevard, East St. Louis, Illinois, while said female was a ward of the State of Illinois Department of Children and Family Services and further while said female minor was on runaway status from said department. That such actions constitute conduct unbecoming a police officer in violation of the Manual of Rules and Regulations of the Police Department,

City of East St. Louis, Illinois, dated January 2, 1955; Discipline, sec. 1, par. 4, pg. 22.

2. That during the period between March 1984, and August 16, 1984, Officer Jerry McHenry was in neglect of his duty in that he neglected and failed to deliver Cornelia Conley, a female minor age 14, to the State of Illinois Department of Children and Family Services or other proper authorities upon her apprehension.

3. During the period between March 1984, and August 16, 1984, Officer Jerry McHenry engaged in sexual intercourse with Cornelia Conley, a female minor age 14, at his residence located at 553 Gray Boulevard, East St. Louis, Illinois, while said female was on runaway status from the State of Illinois Department of Children and Family Services. That such actions constitute conduct unbecoming a police officer in violation of the Manual of Rules and Regulations of the Police Department, City of East St. Louis, Illinois, dated January 22, 1955; Discipline, sec. 1, par. 4, pg. 22; and also was in violation of the Manual of Rules and Regulations of the Police Department, City of East St. Louis, Illinois, dated January 1, 1955; Discipline, sec. 1, par. 5, pg. 22, 'Immoral Conduct.'

4. During the period between March 1984, and August 16, 1984, McHenry encouraged, permitted and allowed Cornelia Conley, a female minor age 14, to engage in sexual intercourse with others at his residence located at 553 Gray Boulevard, East St. Louis, Illinois, while said female was on runaway status from the State of Illinois Department of Children and Family Services. That such actions constitute immoral conduct in violation of the Manual of Rules and Regulations of the Police Department, City of East St. Louis, Illinois, dated January 1, 1955; Discipline, sec. 1, par. 5, pg. 22.''

The hearing on these charges began on October 4, 1984. The Board heard the testimony of several witnesses, including the direct examination of Cornelia Conley (Conley). The hearing was continued until October 11, 1984, at which time Conley was cross-examined briefly by McHenry's counsel. The cross-examination was cut short when Conley refused to answer further questions. The Board then consulted the St. Clair County State's Attorney's office concerning the possibility of a grant of immunity to Conley. The State's Attorney's office declined to grant Conley immunity because it feared that granting her immunity would damage a possible criminal case against McHenry and because juvenile petitions were pending against Conley.

The Board then moved to continue the proceedings on the charges against McHenry until the other matters were fully resolved.

Shortly thereafter McHenry was indicted by the St. Clair County, Illinois, grand jury on charges of aggravated criminal sexual abuse and contributing to the delinquency of a minor. A hearing was held on October 30, 1984, to convert McHenry's suspension with pay to one without pay. After hearing the testimony of Chief Wren, the Board voted to suspend McHenry without pay. On October 25, 1985, the criminal charges pending against McHenry were dismissed.

The next hearing before the Board occurred on December 10, 1985. At that time McHenry's counsel attempted to continue his cross-examination of Conley, who had been granted immunity. However, her response to most of McHenry's counsel's questions was "I don't recall."

The Board entered its order discharging McHenry from the police force on February 11, 1986. It amended this order on February 21, 1986, to include its findings of fact. The Board found that McHenry committed all the acts described in the charges set forth above. McHenry filed his complaint in the St. Clair County circuit court on February 14, 1986. As noted above, the trial court found the Board's findings were against the manifest weight of the evidence and that the delay in the proceedings violated McHenry's rights to due process of law. On appeal the City of East St. Louis contends that the trial court erred in finding that the Board's decision was against the manifest weight of the evidence and that the delay in the proceedings violated McHenry's rights to due process of law. We feel that the trial court's decision, insofar as it relates to paragraphs 3 and 4 of the charges against McHenry, was correct. However, we believe that the trial court erred in finding that the Board's decision regarding paragraphs 1 and 2 was against the manifest weight of the evidence. Additionally, we do not believe that McHenry's due process rights were violated.

■ In disciplinary proceedings against police officers, the trial court, in reviewing the agency's decision, is limited to ascertaining whether the agency's findings were contrary to the manifest weight of the evidence. (*Moriarty v. Police Board* (1972), 7 Ill. App. 3d 978, 289 N.E.2d 32.) The agency's finding cannot be said to be against the manifest weight of the evidence unless it appears from the record that the opposite conclusion is clearly evident. (*King v. City of Chicago* (1978), 60 Ill. App. 3d 504, 508, 377 N.E.2d 102, 106.) Additionally, the findings of the Board on questions of fact are to be deemed *prima facie* true and correct. (*Rispoli v. Police Board* (1989), 188 Ill.

App. 3d 622, 635, 544 N.E.2d 1063, 1072.) Moreover, the assessment of the credibility of the witnesses is a matter for the trier of fact, who observed their demeanor. *Douglas v. Daniels* (1978), 64 Ill. App. 3d 1022, 1028, 382 N.E.2d 90, 95.

■ Paragraph 1 of the charges against McHenry alleged that he allowed Conley, a 14-year-old runaway, to live with him. McHenry testified not only that Conley had never lived with him but also that he had only spoken to her very briefly on two prior occasions. However, ample evidence was presented at the hearing from which the Board could conclude that Conley did in fact live with McHenry. John Lee Gilbert testified that he lived four houses down the street from McHenry and that McHenry's front door and porch were visible from his home. He testified that he had seen Conley enter and exit McHenry's home several times in June 1984. He testified that he saw Conley at McHenry's home "mostly every day" in July of 1984. He also testified that he saw Conley and McHenry enter and exit McHenry's home together on approximately five occasions. In addition, he stated that he had seen Conley enter McHenry's home at all hours of the day.

Brenda Andrews testified that during March through August 1984, she lived with her grandmother two houses away from McHenry. She testified that during this time she had seen Conley enter and exit McHenry's home several times. She also stated that she saw McHenry and Conley entering and exiting McHenry's home together between 5 and 10 times.

Rodney Brown testified that he lived two houses away from McHenry from February through August 1984 and that he knew McHenry through McHenry's son. Brown stated that he saw Conley enter and exit McHenry's home approximately seven times. He also stated that he saw Conley and McHenry enter the house together once or twice.

While Conley also testified that she lived with McHenry, we feel that the testimony summarized above was sufficient, in and of itself, to support the Board's finding that Conley lived with McHenry. We note also that Conley testified that McHenry had previously run a record check on her sometime between September and December 1983. On cross-examination, Conley stated that McHenry told her the record check revealed that she was a juvenile runaway. We feel that from this evidence the Board could properly infer that McHenry was aware of the fact that Conley was a runaway during the time she lived with him.

The foregoing review of the record makes it clear that the Board's findings with respect to paragraphs 1 and 2 of the charges filed against McHenry were not against the manifest weight of the evidence.

■ We do agree with the trial court, however, that the Board's findings concerning paragraphs 3 and 4 are against the manifest weight of the evidence. Paragraph 3 alleges that Officer McHenry had sexual intercourse with Conley. The only evidence which tends to support this allegation is the testimony of various witnesses which indicates that Conley lived with McHenry and the direct testimony of Conley wherein she stated that she had sexual intercourse with McHenry. A review of the record, however, reveals that Conley initially told Officer Brewer that she had intercourse with McHenry only one time. Subsequently, Conley informed Officer Brewer that she and McHenry engaged in sexual intercourse on more than one occasion. On October 4, 1984, Conley testified that she had sexual intercourse with McHenry every night from March through August 1984. Paragraph 4 alleges that Officer McHenry allowed and encouraged Conley to have sexual intercourse with others. The only evidence which tends to support this allegation is the testimony of various witnesses which indicates that men were seen entering McHenry's home and the direct testimony of Conley wherein she states that McHenry encouraged and allowed her to have sexual intercourse with these individuals.

On December 10, 1985, on cross-examination Conley testified that she did not remember ever engaging in sexual intercourse. When questioned further she stated that she could not remember ever having sexual intercourse with anyone except McHenry. She did not, however, remember when this event occurred. The confusion in Conley's earlier testimony surrounding the sex charges and her later lack of memory require us to conclude that the Board's determination that McHenry engaged in sexual intercourse with Conley and that he encouraged and allowed her to engage in sexual intercourse with others is against the manifest weight of the evidence.

The trial court also held that the delay in these proceedings violated McHenry's right to due process of law. The charges set forth above were filed with the Board by Chief Wren on September 6, 1984. The hearing began on October 4, 1984, and after the first continuance was granted it resumed on October 11, 1984. At the October 11, 1984, proceeding, Conley, after brief cross-examination by McHenry's counsel, exercised her fifth amendment right and refused to answer further questions. After learning that Conley would not be granted

immunity because of the possibility that it might damage the State's criminal case against McHenry and because juvenile petitions were pending against Conley, the Board stated that the matter would be continued until the criminal proceedings were resolved. The criminal charges were formally brought against Officer McHenry on October 5, 1984, but were subsequently dismissed October 25, 1985. In addition, Conley had by that time been granted immunity by the State's Attorney's office. The hearing on the civil charges was concluded on December 10, 1985.

■ The discharge of police officers is governed by section 10—2.1—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—17). The statute provides in pertinent part:

> "§10—2.1—17. Removal or discharge—Investigation of charges—Retirement. Except as hereinafter provided, no officer or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. *** The board of fire and police commissioners shall conduct a fair and impartial hearing of the charges, to be commenced within 30 days of the filing thereof, *which hearing may be continued from time to time.*" (Emphasis added.)

The plain wording of the statute clearly indicates that the Board may continue the case from time to time in its discretion.

■ Moreover, counsel for McHenry did not clearly object to the continuance until December 11, 1985, when the hearing was actually resumed. In fact, at the earlier proceedings McHenry's counsel encouraged the Board to delay the matter until the criminal case was resolved. At the October 4, 1984, proceedings, counsel for McHenry, in his opening remarks, stated that the hearing should be delayed until the criminal matter was fully resolved because he did not believe the Board would get a true and accurate picture of the case. During the October 11, 1984, proceeding, after Conley refused to answer questions, McHenry's counsel stated:

> "Our position is the hearing would have to stop at that point. Either we say hold it in abeyance or dismiss it, one or the other, the chief witness will not testify.
>
> Rather than get us into this circular motion again, particularly if there is, in fact, a pending Grand Jury, we may well be able to resolve it if they would simply indicate they will wait until the outcome of the Grand Jury. We will all be protected.

The Board then will be doing the normal course of events of most cases, the criminal charges are completed one way or another."

Shortly thereafter, when the Board learned that Conley would not be granted immunity, the Board chairman asked if there would be any objections to continuing the case until the criminal matter was resolved. Counsel for the city stated:

"Well, based upon the phone call that the attorney for the Board received indicating no immunity for the witness, I can understand the dilemma the Board is faced with.

I would have no objection to the continuance, with the exception that the City would want the continuance be granted [*sic*] but that Officer McHenry have his pay withheld from him pending the reinstitution of this hearing."

McHenry's counsel responded:

"In response thereto, I would indicate to the Board the very reason that the matter is carried over is a prosecution witness is taking the Fifth Amendment. The respondent has done nothing to create the continuance, has done nothing to cause the dilemma, that we, in fact, kind of informed the Board ahead of time this will come to pass.

I don't see why he should be punished because a witness for the Petitioner here is refusing to answer the questions before this Board."

It appears that McHenry's counsel's objection was not to the continuance itself, but to counsel's argument that Officer McHenry should be suspended without pay. In response to these arguments, the Board voted to continue the matter with Officer McHenry remaining on suspension with pay. Under these circumstances, we cannot say that the delay in the conclusion of these proceedings violated McHenry's right to due process of law.

McHenry also argues that his due process rights were violated because he was unable to finish his cross-examination of Conley. We note that the only testimony of Conley necessary to support the Board's decision on paragraphs 1 and 2 is her statement that McHenry was aware that Conley was a runaway. McHenry's counsel was afforded the opportunity to cross-examine and did in fact cross-examine Conley on this point at the proceedings held on October 11, 1984. Because we agree with the trial court's decision that the Board's decision on paragraphs 3 and 4 was against the manifest weight of the evidence, any further discussion of this issue is unwarranted.

■ The only remaining question for us to decide is whether we must remand this case to the Board to determine if paragraphs 1 and 2 warrant termination of McHenry from the East St. Louis Police Department. In *Douglas v. Daniels* (1978), 64 Ill. App. 3d 1022, 382 N.E.2d 90, the court stated:

> "While it is true that where only the less serious findings of the Board are sustained on appeal, the cause should be remanded to determine whether the lesser charges in themselves are cause for discharge [*sic*]. [Citation.] We will not remand as we cannot say that the charges sustained by the evidence were of a lesser stature than those not sustained. To the contrary we believe the record reveals acts which render plaintiff's continuance as a police officer detrimental to the discipline and efficiency of the service." (*Douglas*, 64 Ill. App. 3d at 1029, 382 N.E.2d at 95.)

Moreover, a single valid finding of a violation of departmental rules will authorize dismissal. (*King*, 60 Ill. App. 3d at 508, 377 N.E.2d at 106; *Moriarty*, 7 Ill. App. 3d at 982, 289 N.E.2d at 35.) We feel that the commission of the acts set forth in paragraphs 1 and 2 by McHenry render his continuance as a police officer for the City of East St. Louis a detriment to the efficiency of the department and to society in general. We, therefore, reverse the judgment of the circuit court and remand the cause with directions to enter a judgment restoring the decision of the East St. Louis Fire and Police Board discharging McHenry from his position with the East St. Louis police department.

Affirmed in part; reversed in part and remanded with directions.

HARRISON and WELCH, JJ., concur.