WILLIAM D. CROWELL, Plaintiff-Appellant, *v.* THE POLICE BOARD OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

(No. 60677;

First District (3rd Division)—September 18, 1975.

Charles Locker, of Chicago, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Lucia T. Thomas, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

William Crowell, a policeman with 17 years' experience was found guilty by the Chicago Police Board of violating the following rule of the Chicago Police Department:

"Rule 2. Any action or conduct which impedes the Department's efforts to achieve its goals or brings discredit on the Department."

The board's decision was upheld by the Circuit Court and Crowell has pursued his appeal here, contending that the court was in error in not finding that the decision of the board was against the manifest weight of the evidence.

The charge against Crowell arose from his conduct while he was under investigation for mistreating and accepting a bribe from a man he had arrested. At the hearing before the board, William Neal testified that Crowell and another police officer stopped him for a traffic violation on November 10, 1971. Crowell ordered him out of his auto, searched him and then drove him in a squad car to the Racine Avenue police station. On the way, Crowell said he had not had time on a previous occasion to search Neal's car but he had plenty of time now and knew what to look for. Neal replied there was nothing to find. At the station Neal was forced to remove his clothing and was searched for marijuana. After this they went to the police parking lot where Crowell thoroughly searched Neal's car. He announced that he had found what he was looking for and put a "pinch of something" in a paper napkin. The officer who had driven Neal's car to the station remarked that Crowell had found nothing and Crowell told him to go about his own damn business. They returned to the station and Crowell went through the motions of making an arrest. Neal asked him what he wanted. Crowell led him into the garage and asked, "Well, what is it worth to you?" Neal suggested $5 and then $100; Crowell demanded $200. Neal said he would pay nothing until his car keys were given back to him. They located the officer who

had the keys and went into a washroom where the officer gave them to Neal. Neal first handed $200 to this officer who refused it and then to Crowell who also declined to accept it, so Neal put the money down and left.

When he arrived home, he telephoned the police department's central headquarters and inquired about the way to file a complaint. He was directed to the Racine Station; he returned there and spoke to the captain, who instructed a sergeant to transcribe his report. He excused himself to go to the washroom and a policeman followed him in. The policeman said he had been asked to give "this" to Neal and handed him $200. Thereafter, Neal told the sergeant to forget about his complaint and left the station. The sergeant did not forget; he pursued the matter until Neal gave him a full statement several months later.

In the interval, Crowell communicated with Neal from time to time, the first occasion being the evening after the arrest. Neal testified that Crowell said:

"I didn't have to put the people on him. I told him I didn't have no other choice, because I don't have money to give away and I am not going to give it away like that."

On another occasion Crowell asked Neal to see what he could do for him, that he didn't want Neal to prosecute him. On another, he requested Neal to go to his partner's house so that the charges could be discussed. Neal testified that he had numerous other conversations with Crowell as to whether he had heard from the police officials who were investigating his charges. Finally, in July of 1972, Crowell gave a note to a friend of Neal's with the request that it be forwarded to Neal. The note, to be signed by Neal, was handwritten by Crowell and addressed to the Director of the Internal Affair's Division of the Chicago Police. It said:

"I William Neal have found out that there are two officers accused of the complaint I lodged with you. Officers Crowell and Kidd.

I would like it to be known that these are not the officers involved."

Crowell admitted writing the note, but in his testimony before the board he denied stopping and searching Neal in November 1971, and he denied having subsequent face-to-face meetings with him or questioning him about the progress of the investigation. His explanation for writing the note was that the friend of Neal's to whom it had been given told him that Neal concocted the bribery claim to cover the lack of money he owed to another person; that Neal wanted to drop the charges and the friend asked Crowell what the procedure was. Crowell replied that Neal should go to the internal affairs division of the police department and explain his mistake. The friend asked him to write a sample statement and Crowell complied by writing the note on a piece of paper he found on the ground.

Based upon this evidence, the police board found Crowell guilty of violating Rule 2 and discharged him from the force. His codefendant was found not guilty.

The codefendant was Crowell's partner and ostensibly the other participant in the arrest. However, Neal was never given an opportunity to identify him. Neal knew Crowell from prior confrontations, but not his companion. He referred to him by name and as the "other officer" during the hearing, but Neal had heard his name from policemen who interviewed him and had seen it in the note Crowell wrote. The officer was never placed in a lineup, his picture was not among those shown Neal and he did not appear at his trial. His counsel waived his presence and the hearing proceeded without him. Thus, for lack of identification, the board had no alternative but to absolve him of the charge.

Crowell disputes the finding of the board both in fact and in law. He argues that it is proper for an accused or his attorney to interview witnesses, and, therefore, even if Neal's testimony is accepted there is no proof that he, acting pro se, did anything wrong. He points out that, although he was charged with soliciting a bribe, the board did not find him guilty of this charge; that he never asked Neal to refrain from discussing the case with anyone, communicated false information to him, threatened him, offered him money, advised him to leave the jurisdiction or not to attend the hearing; that he was not guilty of any conduct prohibited by rule, regulation, ordinance or statute.

◑▮ The findings and conclusions of an administrative agency, such as the Chicago Police Board, on questions of fact are prima facie true and correct (Ill. Rev. Stat. 1973, ch. 110, par. 274), and its decision is not to be set aside unless it is against the manifest weight of the evidence. (*Avent v. Police Board* (1964), 49 Ill.App.2d 228, 199 N.E.2d 637.) The existence of conflicting testimony is not a sufficient basis to reverse an administrative decision as it is the province of the agency to resolve any conflict presented by the evidence and to determine the credibility of the witnesses. (*Schnulle v. Board of Fire & Police Commissioners* (1974), 16 Ill.App.3d 812, 306 N.E.2d 906; *Ceja v. State Police Merit Board* (1973), 12 Ill.App.3d 52, 298 N.E.2d 378.) The exoneration of Crowell for soliciting a bribe or the finding of not guilty on other charges of which he was accused is no reason for holding that his conviction for violating Rule 2 must be reversed.

▮▮ The factual finding of the board was not against the manifest weight of the evidence. This being so, it became the board's responsibility to evaluate the seriousness of Crowell's conduct and determine if it was cause for removing him from the police force. (Ill. Rev. Stat. Section 10—1—18.1 of the Illinois Municipal Code, 1973, ch. 24, par. 10—1—

18.1) provides that "no officer * * * of the police * * * may be removed or discharged, * * * except for cause * * *." Inasmuch as the statute does not define the word "cause" it was the police board's function, subject to judicial review, to interpret the word and its applicability to the case before it. (*Kelly v. Police Board* (1975), 25 Ill.App.3d 559, 323 N.E.2d 624.) In *Coursey v. Board of Fire & Police Commissioners* (1967), 90 Ill.App.2d 31, 37, 234 N.E.2d 339, this court said:

> "Although 'cause' is not defined by the statute, the courts have construed it to be some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position."

While the authority to discharge an officer is not arbitrary, a police board has considerable latitude in determining what constitutes cause for removal. (*Petraitis v. Board of Fire & Police Commissioners*, 31 Ill.App.3d 864.) A board's decision as to the existence of cause will not be reversed as long as its finding is related to the requirements of the service and not so trivial as to be unreasonable. *Davis v. Board of Fire & Police Commissioners* (1962), 37 Ill.App.2d 158, 185 N.E.2d 281.

The conduct of which Crowell was found guilty was anything but trivial. It was not merely interviewing a witness, or merely requesting the witness to forward an explanatory note to the director of internal affairs. It was an attempt to persuade the witness to abandon his charges and more, it was an attempt to get the witness to change his story. Granting that Crowell had the right to communicate with Neal for the purpose of ascertaining his testimony, he had no right to dissuade Neal from pursuing his complaint and none to influence his testimony. Crowell's actions were patently intended to obstruct the investigation. When he asked Neal to see what he could do for him, he was interfering with the investigation. When he asked Neal not to prosecute him, he was trying to stop the investigation. When he asked that Neal send a letter to the police department saying that he was not the officer involved, he was tampering with Neal's testimony, requesting him to contradict his complaint and to make a statement known to him to be untrue. The fact that these actions were not accompanied by threats, intimidation, harassment or bribery does not lessen their gravity—although the employment of any of these means would have aggravated it.

Neal never indicated that he wanted to drop the charges because he had some doubt that Crowell was the officer involved, or that the policeman had mistreated him or solicited the bribe. On the contrary, Neal left the Racine Avenue station and temporarily stopped cooperating with the

investigating sergeant only because his money had been returned to him. Crowell's intent in his communications with Neal was to defeat the department's investigation, not to persuade an uncertain witness to drop doubtful charges.

■■ Because the office of a policeman entails the power of arrest and the authority to use force, police officers who are guilty of misconduct must be punished according to the seriousness of their misconduct. The board's conclusion that Crowell was guilty of conduct which impeded the police department's efforts "of achieving its goals of maintaining honesty and integrity within the Department," and its order that he be discharged from his position as a patrolman, were neither improper nor inappropriate. To condone Crowell's actions would be to nullify the authority upon which effective enforcement of the law is dependent. The decision was not arbitrary; it was reasonably related to the discipline, integrity and efficient operation of the department and to the maintenance of the respect of the public whom it serves.

The judgment of the Circuit Court upholding the decision of the police board is affirmed.

Affirmed.

McNAMARA and MEJDA, JJ., concur.