JAMES F. FORNUTO, Plaintiff-Appellee, *v.* THE POLICE BOARD OF THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (1st Division)    No. 61048

Opinion filed May 17, 1976.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Roseann Oliver, Assistant Corporation Counsel, of counsel), for appellants.

Jerome N. Zurla, of Chicago (Dore & O'Toole, of counsel), for appellee.

Mr. JUSTICE BURKE delivered the opinion of the court:

James Fornuto, a police officer, was charged with violating four rules of the Chicago Police Department: rule 6 prohibiting disobedience of orders or directives of the Department by failing to arm himself with a regulation weapon; rule 8 prohibiting any disrespectful or willful maltreatment of any person by intentionally and without justification shooting one Robert Smith; rule 36 prohibiting the unlawful and unnecessary use or display of a weapon by firing his weapon unnecessarily and thereby causing the death of Robert Smith; and rule 2 prohibiting conduct which impedes the Department's goals and brings discredit on the Department by the conduct specified under the violations of rules 6, 8 and 36. After a hearing, the Police Board found James Fornuto guilty of violating these rules and ordered that he be discharged from the Police Department. Officer Fornuto filed a complaint for review under the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, pars. 264-279). The court remanded the cause to the Police Board for further consideration and it was reargued before the Board. The Board refused to alter its findings and decision. The circuit court reversed the Board's findings. The Police Board has appealed contending that the Board's findings and decision were not against the manifest weight of the evidence.

At the hearing conducted by a hearing officer for the Police Board, testimony was taken from Officer Fornuto and a number of witnesses to the events surrounding the shooting. Fornuto was the only eye witness to the shooting and what transpired in the last few seconds before the shooting, but a number of witnesses observed the events leading up to the shooting and what happened immediately thereafter. There is little dispute about the events leading up to the shooting; the only conflicting

evidence concerns the shooting and the events of the last few seconds before the shooting.

The incident began about 10 p.m. on December 23, 1971, when James Vose got into an altercation with Robert Smith and a companion of Smith's. After this took place, Vose testified, Vose and his companion, Dennis Netherton, proceeded to the Lemmon Tree Tavern at 77th and Exchange Avenue in Chicago, where Vose was an employee. While Vose was treating his bleeding eye with a towel and ice, Robert Smith and his companion started to enter the tavern. When Smith and his companion saw Vose they dashed out the door. Vose yelled to Netherton that these were "the two guys that beat me up." Vose rushed out the door after them with Netherton following.

At the time James Fornuto and his partner, Officer James Magee of the Chicago Police Department, were proceeding down 77th Street in plain clothes in an unmarked car. They observed Vose chasing the two youths, and when Vose recognized Officer Magee he testified that he shouted that the two youths had "beat me up." Vose, when questioned by the Board's attorney and shown a document at trial, could not recall whether he had made a statement to the police that he had been robbed by Smith and his companion. However, both Officers Magee and Fornuto testified that Vose had shouted that Smith and his companion had robbed him. Vose's companion, Dennis Netherton, testified that when the police report was made out later Vose claimed that these two had robbed him.

Magee and Fornuto stopped their car and gave chase to Smith and his companion. Officer Fornuto followed Robert Smith who ran North on Burnham while Officer Magee chased Smith's companion who ran west on 77th Street. At this time two other police officers, Albert Jackson and James Browne, were parking their police vehicle on Exchange Avenue. Officer Jackson testified that he heard some loud shouts and observed Officers Magee and Fornuto chasing two youths. Jackson exited the car and crouched behind some cement pillars waiting for the individual Fornuto was chasing to "run right into me." He stated that Fornuto was about 10 feet behind Smith the last time he observed them. Jackson's partner, Officer Browne, followed Jackson but apparently did not observe the chase and was unaware of what was going on. During this time, Jackson testified, he heard someone yell something to the effect of "Stop" or "Halt" and "Police officers." A few moments later, while he was crouching behind the pillars he heard a shot. He looked around the pillar and observed Officer Fornuto standing and looking down at the sidewalk. He crossed the street and observed Robert Smith lying on the ground. Jackson then went to aid Officer Magee. Magee did not catch the person he was chasing, and Magee and Jackson returned to where Robert Smith was lying on the sidewalk. Other officers were now present, and Jackson

testified that he observed Officer Fornuto holding a knife in his hand. Jackson testified that the knife had a blade about 6 inches long. He testified that he remembered Fornuto stating that he thought there was a robbery and he chased the individual and "when he caught up with him the kid turned on him with a knife."

James Vose testified that he heard an officer shout, "Halt, Police." He then observed Smith lunge at Officer Fornuto with a knife in his hand. Vose testified that his attention was diverted for a second. He then heard a shot and looked back and observed Smith lying on the ground and the plaintiff removing a knife from his hand. According to a statement Vose made to the police the following day, Vose had observed these events from about a block away.

James Fornuto testified that after he heard Vose yell that Smith and his companion had robbed him, he gave chase to Smith. He yelled "Halt, police" several times and was gaining on Smith with his gun drawn. When he was within 5 to 7 feet of Smith, Smith suddenly stopped and turned to face him. Smith had a knife in his hand. Smith lunged at Fornuto with the knife from a distance of about 3 feet. Fornuto testified that he sidestepped Smith, crouched down and fired his gun at Smith's "back region." Fornuto testified that when he fired he was in fear of his life. Smith was about 2 or 3 feet from the gun when it discharged. Smith fell to the sidewalk, and Fornuto bent down and took the knife out of Smith's hand and apparently put it in his pocket. When a police sergeant arrived on the scene he took the knife out of his pocket, showed it to the sergeant and put it back in his pocket. He later turned the knife over to an investigator at the Fourth District Police Station.

The following day Officer Fornuto was questioned about the incident by Ronald Magnes, an Assistant State's Attorney, with police investigator John Ciszewski and court reporter Arthur Berg present. The interrogation was recorded by Mr. Berg and a transcript of that interrogation was admitted into evidence at Fornuto's hearing. Fornuto's statements during the interrogation were basically the same as his testimony at trial except for some differences in exactly what happened in the last few seconds before the shot was fired. During the interrogation Fornuto stated that after Smith had lunged at him with the knife and Fornuto had sidestepped Smith, Smith "turned around and fled again and I shot him." Fornuto stated in the interrogation that he had cocked his pistol immediately after Smith had lunged at him and fired in Smith's direction at Smith's "backside." Fornuto stated that he did not know how many seconds after Smith lunged at him he had fired the gun, but he estimated that Smith was 5 to 8 feet from him at the time. Fornuto stated that he believed his life was in danger at the time. When his interrogator asked if it was not a fact that he did not fire the gun until Smith had turned

his back and was running from Fornuto, Fornuto stated that, "I fired the gun immediately after he had lunged at me* * * as soon as I cocked it." He stated that when the shot was fired, Smith had his back towards him and he intended to wound him.

A transcript of these statements was typed and submitted to Officer Fornuto several days later for his signature. Before signing it he made certain handwritten corrections which basically crossed out any reference to Smith turning and running before the shot was fired. Fornuto wrote in several places that he fired the shot immediately after Smith had lunged at him. This transcript, in which Fornuto had made changes and signed, was also admitted into evidence with the unchanged version which he had not signed. A firearms use report signed by Officer Fornuto and submitted to the police stated that, after shouting "Halt, police," Smith had turned on him with a knife. Smith lunged at him, the report stated, and Fornuto sidestepped him and fired one round at Smith from a distance of 8 to 15 feet. The coroner's report indicated that the bullet fired by Fornuto's gun struck Smith on the lower left side of the back of the neck and traveled in a "sharply upward" course, lodging in the base of Smith's skull.

Several witnesses testified to what they saw after they heard the shot fired. Officer James Browne, who was on patrol with Officer Jackson, testified that after the shot was fired he saw Officer Fornuto crouch down and stand up holding a knife with a blade 4 or 5 inches in length. Dennis Netherton, Vose's companion, stated that he didn't remember seeing a knife at the scene of the shooting. However, he testified that he was shown a knife at the police station after the incident. Two residents in the area, Marc Allison and Charles Sayles, testified that they were in their apartments when they heard a shot fired. They looked out after a few seconds and observed Officer Fornuto standing near Smith's body. Neither saw a knife, although Sayles testified that he did hear one of the officers at the scene ask Fornuto about a knife.

During the hearing there was testimony by Officer Fornuto concerning the gun he was carrying that day. Fornuto at the time of the incident was carrying a 9-millimeter automatic Colt Commander handgun. Fornuto stated that this was not his service revolver, and he was not carrying his service revolver because when he went on duty that day the shoulder holster for his service revolver broke. He, therefore, left his service revolver in his locker and took his automatic, which he tucked into his pants belt. He stated that he was authorized to carry the automatic as a "second weapon" because he had qualified with it on the target range and had received a card for it. A copy of Chicago Police Department General Order 68-16 was placed in evidence which stated that part of an officer's regulation uniform while dressed in plain clothes was a .38-caliber revolver of certain specifications.

After reviewing the evidence the Police Board found Officer Fornuto guilty of violating the four specified Police Department rules: rule 6 prohibiting disobedience of orders or directives of the Department by failing to arm himself with a regulation weapon; rule 8 prohibiting any disrespectful or willful maltreatment of any person by intentionally and without justification shooting one Robert Smith; rule 36 prohibiting the unlawful and unnecessary use or display of a weapon by firing his weapon unnecessarily and thereby causing the death of Robert Smith; and rule 2 prohibiting conduct which impedes the Department's goals and brings discredit on the Department by the conduct already specified under the violations of rules 6, 8 and 36. The Police Board contends that the circuit court erred in reversing its findings and decision because their decision was not against the manifest weight of the evidence.

The violations of rules 8 and 36 were both based on findings that Officer Fornuto was guilty of an unjustified and unnecessary shooting. While there is no question that Officer Fornuto fired the shot which killed Robert Smith, there are certain circumstances where police officers are authorized to use force likely to cause death or great bodily harm, three of which we believe are applicable here. Section 7—5 of the Illinois Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 7—5) authorizes police officers to use such force when an officer reasonably believes such force is necessary to protect himself from death or great bodily harm or to prevent the escape of an individual who has committed a forcible felony or is attempting to escape by the use of a deadly weapon. The police rules admitted in evidence at the hearing also authorize use of deadly force under these circumstances.

It was clear from the evidence that Officer Fornuto's life was in danger when Robert Smith lunged at him with a knife. James Vose's testimony corroborated Fornuto's testimony that Smith had lunged at Fornuto with a knife and there is no evidence to contradict this fact. While two residents testified that after hearing the shot and looking out they did not see a knife, this does not establish there was no knife at the scene because Fornuto testified that he took the knife from Smith immediately after firing the shot and placed it in his pocket. Four persons testified that they did see the knife at the scene. Fornuto's testimony at trial that he fired at Smith immediately after Smith lunged at him when Smith was only 2 to 3 feet from his gun would certainly justify the shooting as self-defense. The coroner's report which indicated that the path of the bullet was "sharply upward" would corroborate Fornuto's testimony that he fired from a crouched position at close range. If Robert Smith had been very far away the bullet would have taken a more horizontal path.

The Police Board contends, however, that it had a right to believe the recorded statements that Fornuto made to the State's Attorney the day

after the shooting, and this, the Board contends, tells a very different story. The evidence here shows that Smith was 5 to 8 feet away from Fornuto's gun when the shot was fired and that Smith had turned to flee. However, Fornuto also stated during that interrogation that he had cocked his pistol immediately after Smith had lunged at him and then fired in Smith's direction, being in fear of his life. The discrepancies in Fornuto's testimony at trial and his earlier statements merely establish that Smith may have been a step or two further away and that a second or two elapsed after Smith had lunged at him with the knife while Fornuto was cocking his gun.

■■ This court has stated before that where self-defense is an issue, if a person is in reasonable fear of his life, the passage of one or two seconds during which the cause of the fear abates is normally not enough to hold that person guilty of an unjustified homicide where he would have been justified in using deadly force only a second or two prior. (*People v. Bailey*, 27 Ill. App. 3d 128, 326 N.E.2d 550. Also see *People v. McGraw*, 13 Ill. 2d 249, 149 N.E.2d 100; *Brown v. United States*, 256 U.S. 335, 65 L. Ed. 961, 41 S. Ct. 501.) In *People v. Motuzas*, 352 Ill. 340, 346, 185 N.E. 614, 617, the Supreme Court of Illinois stated that:

> "The law does not charge an individual, when he has reasonable grounds to believe himself in apparent danger of losing his life or suffering great bodily injury, to use infallible judgment. It would be unreasonable to require such an exercise of careful judgment in the space of a few seconds while one 'under great stress and excitement * * *.'"

While viewing the incident in hindsight, one might find that the danger to Officer Fornuto had abated a second or two before he fired the shot, we are of the opinion that it would be unreasonable under the circumstances of this case to require Officer Fornuto to have exercised such infallible judgment only a second or two after an individual had lunged at him with a knife.

We also are of the opinion that the shooting could be justified for two other reasons: that under the circumstances Officer Fornuto reasonably believed it was necessary to use force likely to cause death or great bodily harm in order to stop the escape of a person who had committed a forcible felony or who was attempting to escape by employing a deadly weapon. Both Fornuto and Officer Magee testified that when they initially arrived on the scene they saw James Vose chasing Robert Smith and shouting that Smith had robbed him. Robbery is a forcible felony. (Ill. Rev. Stat. 1973, ch. 38, par. 2—8.) Whether Smith in fact had robbed Vose is irrelevant. The only question is whether Officer Fornuto reasonably believed that Smith had done so, and the statement of a normal citizen who is in pursuit of the suspect that this suspect had robbed him is

sufficient to support such a reasonable belief. The evidence also showed that Smith was attempting to escape by the use of a deadly weapon when he lunged at Officer Fornuto with a knife.

The Police Board argues that even if this was true, the shooting was not necessary to prevent Smith's escape. The Board suggests that Officer Fornuto should have fired a warning shot first. We do not agree. Officer Fornuto had already pursued Smith on foot and shouted, "Halt, police" and Smith had given no indication he was going to submit to arrest. Instead, Smith had lunged at Officer Fornuto with a knife. A warning shot was unnecessary to inform Smith that Officer Fornuto had his gun drawn, as Smith had already lunged at Fornuto with a knife while Fornuto was holding his gun out. We are of the opinion that Officer Fornuto had expended all reasonable alternatives to prevent Smith's escape by nonviolent means, and therefore reasonably believed that it was necessary to use force likely to cause death or great bodily harm to prevent the escape of a fleeing felon who was attempting to escape by the use of a deadly weapon.

■■ Where the findings of an administrative body are against the manifest weight of the evidence, a reviewing court may reverse that body's findings. (*Davern v. Civil Service Com.*, 47 Ill. 2d 469, 269 N.E.2d 713; *Basketfield v. Police Board*, 56 Ill. 2d 351, 307 N.E.2d 371.) There is no substantial evidence to dispute the fact that Smith had lunged at Officer Fornuto with a knife putting him in reasonable fear of his life nor that Officer Fornuto fired at Smith within a second or two of this event. There is also no substantial evidence to dispute the fact that Fornuto reasonably believed that force likely to cause death or great bodily harm was necessary to prevent the escape of Smith who was attempting to escape by use of a deadly weapon and who Officer Fornuto reasonably believed had committed a forcible felony. We are of the opinion that the Police Board's finding that Officer Fornuto had committed an unjustified and unnecessary shooting is against the manifest weight of the evidence. Therefore, it was proper for the circuit court to reverse the violations of rules 8 and 36.

■■ Officer Fornuto was found to have violated rule 6 by failing to equip himself with a regulation weapon. The evidence established that Fornuto was not carrying his official service revolver the day of the incident because his strap had broken on his shoulder holster for that weapon. He was instead carrying another weapon which he testified he was qualified to carry as a second weapon. While the Chicago Police Board has the power to discharge police officers, such discharge must be for cause. (Ill. Rev. Stat. 1973, ch. 24, par. 10—1—18.1.) The word "cause" has been interpreted by the courts to require something more than "trivial" offenses. (*DeGrazio v. Civil Service Com.*, 31 Ill. 2d 482, 202

N.E.2d 522; *Crowell v. Police Board*, 32 Ill. App. 3d 552, 336 N.E.2d 573; *Caliendo v. Goodrich*, 34 Ill. App. 3d 1072, 340 N.E.2d 560.) This court has stated that "cause" requires:

> "[S]ome substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position." (*Coursey v. Board of Fire and Police Commissioners*, 90 Ill. App. 2d 31, 37, 234 N.E.2d 339, 341, 342.)

While Fornuto's failure to carry his service revolver on the day of the incident was a technical violation of Police Department rules, we are of the opinion that it was, under the circumstances, a violation which should not have resulted in his discharge. He was not carrying the service revolver that day, he testified, because the shoulder strap to its holster broke when he went on duty. There was no evidence offered to refute this explanation. He was carrying another pistol which he testified he was qualified to carry as a second weapon. We find no support in the record for the Police Board's order to discharge Officer Fornuto.

The judgment of the circuit court is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.