JOSEPH RISPOLI, Petitioner-Appellant, v. POLICE BOARD OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—87—0127

Opinion filed September 8, 1989.—Rehearing denied October 19, 1989.

Law Offices of Joseph V. Roddy, of Chicago (Joseph V. Roddy, of counsel), for appellant.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and JoAnne Simboli Hodge, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE PINCHAM delivered the opinion of the court:

Petitioner, Joseph Rispoli, a Chicago police officer, appeals from the trial court's order which affirmed the City of Chicago Police Board's (the Board's) respondents' decision to sever petitioner from the Chicago police department. The facts are as follows.

In June of 1982, petitioner, Rispoli, a Chicago police department detective, had been a City of Chicago police officer for 25 years, the latter 12 years of which he was assigned to the department's central auto theft unit. Since October 1980, Rispoli had also been engaged in a secondary employment, as president and sole shareholder of Cardinal Car City, an automobile repair business.

In June of 1982, the Chicago police department undertook an investigation of Rispoli to determine whether he had been involved in using parts from a stolen automobile on another vehicle which Rispoli's Cardinal Car City auto repair business repaired.

Two investigations were conducted. The first investigation was conducted by Sergeant Curran and Detective Dennis Hayes; both were also assigned to the central auto theft unit and were co-workers of Rispoli. On June 21, 1982, while Rispoli was on annual furlough, he was telephonically notified at his home by Sergeant Curran that he had been named in a criminal investigation. On June 29, 1982, Rispoli appeared with his attorney at the central auto theft unit to meet with Sergeant Curran. At that time, documents relevant to the investigation were tendered to Sergeant Curran by Rispoli.

This initial investigation was pursued from June of 1982 to November or December of 1982 and involved only a 1981 Oldsmobile owned by Lisa Alkazoff which had been repaired at Cardinal Car City, which as stated, was owned by Rispoli. Alkazoff's 1981 Oldsmobile was allegedly repaired with parts from a 1982 Oldsmobile which had been stolen from Olympic Olds, an automobile sales company. During this initial investigation period, the investigators went to the Cardinal Car City premises and other locations to examine documents. In July of 1982, the investigators also interviewed Cardinal Car City shop foreman, Tad Bakun, and took the Alkazoff 1981 Oldsmobile from the Cardinal Car City premises to the police pound to examine it. When Sergeant Curran removed the panel on the right door, he saw a piece of paper glued to the panel. The paper was a broadcast sheet containing the serial number of the vehicle

that the door was to be mounted on. The paper contained a vehicle identification number (VIN) belonging to the 1982 Cutlass Oldsmobile which had been stolen from Olympic Olds.

At the close of this first investigation, Sergeant Curran wrote a report, finding that the allegations that Rispoli had used stolen automobile parts in the repair of automobiles were not sustained. The report was signed by the commander of the central auto theft unit. Thereafter, Sergeant Curran received a written report from the State's Attorney's office to the affect that there was no case against Rispoli and the first investigation was closed.

The second investigation began in February of 1982 and was a reinvestigation of Sergeant Curran's previous investigation of the Alkazoff 1981 Oldsmobile, as well as a broader investigation of allegedly stolen Volkswagon and Mazda automobiles. Sergeant Kark Kurth, an outside investigator from the Internal Affairs Division of the Chicago police department, was assigned to conduct this second investigation. Sergeant Kurth had experience in this field, having himself operated automobile body repair shops.

Sergeant Kurth reexamined the receipts tendered by Rispoli to Sergeant Curran. As a result of that examination, a subpoena was served upon Rispoli for his production of certain additional documents. Rispoli did not produce the documents. The State's Attorney thereafter filed a rule to show cause why Rispoli should not be held in contempt for his failure to produce the documents. Rispoli appeared before the presiding judge of the criminal division of the circuit court of Cook County, who ordered Rispoli to surrender the relevant business records to the assistant State's Attorney. Thereafter Rispoli's attorney turned over three boxes of Cardinal Car City records to the assistant State's Attorney.

The assistant State's Attorney's examination of the records revealed that accurate or authentic documents were missing as to certain transactions; additionally, some of the documents that were turned over were fraudulent and were from companies that did not exist. The assistant State's Attorney never received certain original checks, particularly a $2,100 check payable to Tad Bakun, hereinafter again mentioned.

Sergeant Kurth also examined the documents Rispoli submitted supposedly relating to Alkazoff's 1981 Oldsmobile car, but the documents he found were for a diesel engine, while Alkazoff's 1981 Oldsmobile had a gasoline engine. Sergeant Kurth also found that the Cardinal Car City invoice of Alkazoff's Oldsmobile did not match the Farmer's Insurance Company's estimate of the cost to repair Alka-

zoff's car. The Farmer's Insurance Company repair estimate was $6,500, which included about $3,000 in parts, whereas the Cardinal Car City invoice of the estimate of the Alkazoff's car repair cost was for $3,200 and did not include the $3,000 for parts.

Sergeant Kurth sent paint samples from Alkazoff's Oldsmobile repaired by Cardinal Car City to the FBI crime lab and received a report in February of 1983, which stated that a comparison of paint samples from inside Alkazoff's car and paint samples from the stolen Olympic Oldsmobile revealed that the same paint was used on both, and that the two cars were painted at the same time.

Sergeant Kurth examined the Alkazoff Oldsmobile at the police pound and found, after removing the locks, that the covers on the front door locks had been removed and replaced with ones normally used for body shop work. The chrome on the trunk lock had been removed and replaced with the same kind of lock as on the stolen Olympic Oldsmobile. Additionally, in July and August of 1983, Sergeant Kurth submitted Rispoli's handwriting exemplars to the State crime lab, from which he received two reports.

Based upon the results of this reinvestigation supervised by Sergeant Kurth, the superintendent of the Chicago police department filed charges before the Chicago Police Board against Rispoli, which sought Rispoli's discharge from the Chicago police department. A hearing date on said charges was set and the hearing was continued periodically. During the interim, Rispoli stood trial on various criminal charges. The indictment, transcripts and verdicts of that criminal trial were not before the police board and are not included in the record in the instant appeal, with the exception of the testimony that Rispoli was found not guilty of the criminal charges.

Thereafter, on November 13, 1985, the Chicago police department superintendent withdrew the original charges against Rispoli before the police board and filed amended charges, in writing, with notice to Rispoli, who made no objection to the amended charges nor sought a postponement of the hearing thereon.

In the amended charges Rispoli was charged with violating Rule 2, which provided: "Any action or conduct which impedes the Department's efforts to achieve its policy or goals or brings discredit upon the Department." More specifically, it was alleged that during the period April 13 to June 9, 1982, Rispoli repaired or caused to be repaired Alkazoff's 1981 Oldsmobile Cutlass with body parts from the stolen Olympic 1982 Oldsmobile, knowing the auto and the parts to have been stolen. Additionally, Rispoli was charged with buying, receiving, possessing and/or disposing of these stolen component auto

parts, or causing those actions to be taken with knowledge that the identification number of the parts had been falsified or removed. Rispoli was also charged with misrepresenting or causing to be misrepresented the Olympic 1982 Oldsmobile identity and that of its component parts, and with failing to keep proper records of the identity of the persons from whom the Olympic 1982 Oldsmobile parts were obtained. It was alleged that during this same period, Rispoli retained or caused to be retained an attorney to procure the release of Alkazoff's 1981 Oldsmobile from the custody of the Chicago police department auto pound without the knowledge or permission of its owner, Lisa Alkazoff.

Rispoli was also charged with violating Rule 5, "failure to perform any duty," by failing to report the delivery to and receipt by Cardinal Car City body shop of stolen auto parts from the Olympic 1982 Oldsmobile Cutlass, and that he had a duty so to do.

Finally, Rispoli was charged with violating Rule 14, "making a false report, written or oral," in that on or about June 29, 1982, he submitted a false report and falsified documents to Sergeant Curran and Sergeant Kurth.

An evidentiary hearing by a hearing officer of the Board on the amended charges was held. The evidence presented at the hearing established that on March 30, 1982, Lisa Alkazoff's 1981 Oldsmobile Cutlass was stolen and that when it was recovered on April 9, 1982, its doors, trunk, front end and tires had been removed. Alkazoff had the car towed for repairs to Cardinal Car City, where she spoke with Rispoli. In mid-May of 1982, she picked up the car from the Cardinal Car City repair shop, but she was not satisfied with the repair work. She returned the car and picked it up again around June 8 or 9, but she was still dissatisfied with it. Alkazoff decided to trade the car in at Olympic Oldsmobile. When she took the car to Olympic Oldsmobile, on June 16 to be traded in for another car, two policemen walked in and told her they would have to take her car away because the repaired parts on her car were taken from an Olympic Oldsmobile salesman's car which had been stolen two weeks earlier. The police towed Alkazoff's car to the pound and she never saw it again.

It was stipulated at the hearing that Mr. Christopoulous, the owner of Olympic Oldsmobile, was the lawful owner of the 1982 Oldsmobile Cutlass Supreme stolen from his dealership on April 30, 1982. It was further stipulated that when Lisa Alkazoff took her 1981 Oldsmobile Cutlass Supreme to the Olympic Oldsmobile dealership, numerous parts from Olympic's stolen 1982 Oldsmobile Cutlass Supreme were found on Alkazoff's 1981 repaired Oldsmobile.

Various Cardinal Car City receipts, purporting to be receipts for legitimate parts, were fraudulent. In particular, it was stipulated that the receipts from different businesses for parts for Alkazoff's car in two instances were not from those businesses and in the third instance the business was nonexistent. It was agreed that examination of the records of "V & O Auto Parts" in Sioux Falls revealed no sale records to Cardinal Car City; that "Western Body Parts" likewise made no sale to Cardinal Car City; and that there was no "Import Salvage" in Saledo, Colorado.

While there was no disagreement at the evidentiary hearing that some person or persons at Cardinal Car City repaired Alkazoff's car with stolen parts, there was disagreement that Rispoli knew or should have known of the use of stolen auto parts in the repair of Alkazoff's car.

Alkazoff testified that she spoke directly to Rispoli and that he told her it would cost $2,000 to repair her car. While Rispoli remembered talking to Alkazoff, he denied telling her the cost to repair her car would be $2,000. Rispoli stated he did not know how long Alkazoff's car was in the shop or whether there was a problem finding parts. He only recalled Alkazoff calling and complaining to him over a period of time and him telling her that they were waiting for the parts to repair her car.

The negotiations with Farmer's Insurance Company, the insurer of Alkazoff's car, were similarly disputed by Rispoli at the hearing before the hearing officer. Scott Sura, an auto claims representative for Farmer's Insurance Company, testified that he talked to Rispoli about the cost of the repairs to Alkazoff's 1981 Oldsmobile, that he prepared an estimate, and called Rispoli back. According to Sura, Rispoli agreed to an insurance settlement of $6,500, plus a rental car. Sura stated that he took a check for $6,400, dated April 27, 1981, payable to both Lisa Alkazoff and Cardinal Car City, to Rispoli along with the estimated repair cost. Rispoli denied showing Alkazoff an estimate over Farmer's for the repairs; Rispoli also flatly denied ever seeing a check for $6,400 from Farmer's Insurance Company or signing Alkazoff's name to it. Alkazoff testified that she was unaware of the Farmer's check until she received the cancelled void statement in the mail, and that while her name was signed on the back of the check, it was not her signature. It was agreed that the check was deposited in Rispoli's business account.

With respect to Rispoli's involvement or lack thereof in the actual repair of Alkazoff's car with stolen parts, the police department's primary witness was Tad Bakun, the body shop foreman, at

Cardinal Car City and who, according to Sergeant Curran, was responsible for ordering and purchasing parts for Cardinal Car City. Bakun testified that when he first saw Alkazoff's 1981 Oldsmobile, it was totally stripped. He went to various junk yards and used car dealers, but after two or three weeks he had not found the parts needed for a reasonable price. Bakun went to Rispoli and told him that he was having trouble finding the parts. Rispoli told him to find the lowest cost. Bakun then talked to Lorenzo Perez, who also owned a body shop. Two days later, Perez brought the parts needed in a van to Bakun at Cardinal Car City. These parts were not like other dealer-delivered parts, which ordinarily came primer gray with tags. Instead, these parts were blue, the same color as the Alkazoff car. Bakun testified that he thought the parts were possibly salvage, but he admitted that it was very difficult to obtain similar parts in the same color.

Alkazoff's car was repaired in two or three days. According to Bakun, Rispoli was present during the repair job. He examined the parts in Bakun's presence. Bakun did not remember Rispoli asking where the parts came from.

The same day the parts arrived, Victor Kowalczyk, who was not employed by Cardinal Car City but was at the premises every day as an associate of the general manager, Richard Gage, and Rispoli, gave Bakun a check for $2,100. Bakun cashed the check at the Fullerton-Pulaski currency exchange, paid Lorenzo Perez $1,200 for the parts and gave Kowalczyk the rest. Kowalczyk gave Bakun back $200.

Bakun left his employment at Cardinal Car City in June of 1982. Two or three weeks later, Kowalczyk came to Bakun's house to tell him that investigators were coming to the Cardinal Car City repair shop. Bakun went to the Cardinal Car City shop and saw Rispoli. Rispoli told Bakun to turn himself in. Additionally, Rispoli told Bakun to go to Rispoli's lawyer and follow the lawyer's advice. Rispoli told Bakun that the attorney would cost him nothing and that Bakun would not have to pay the attorney. Bakun talked to Rispoli's attorney once, but hired another lawyer and later pled guilty to stealing auto parts, and he received three years' work release imprisonment.

Two other witnesses testified that they dealt directly with Rispoli in repairing Alkazoff's Oldsmobile. Patrolman Raymond Kilroy stated that he had secondary employment as a locksmith and, in April of 1982, he went to Cardinal Car City to make up trunk and door locks for Alkazoff's 1981 Oldsmobile Cutlass. On May 3, 1982, Rispoli told Kilroy that he needed a receipt for the work. Kilroy said he would have to look up his records and find out what and when the work

was done, but Rispoli stated he needed a receipt right away, so Kilroy gave Rispoli a blank receipt. Farmer's Insurance Company's agent, Scott Sura, testified that he went to Cardinal Car City three or four times to talk to Rispoli. In May of 1982 he went to the shop to look at the Alkazoff car after it had been repaired. He remembered joking with Rispoli about the close color match of the Alkazoff car with the repaired parts and was assured by Rispoli that they were not the same color.

Rispoli denied all involvement in or knowledge of the repair of Alkazoff's Oldsmobile with stolens parts. According to Rispoli he customarily went to his Cardinal Car City business only on afternoons and Saturdays, after finishing his eight-hour daily shift as a Chicago police officer. According to Rispoli, he generally did not go to the body shop, the cleanup shop, or the detail shop. The time Rispoli spent at his business was devoted to checking inventory, employees and payroll. He never personally supervised the body building of any cars, nor examined his books unless he went to his accountant. The task of maintaining the dealer's books was carried out by one of three people, the secretary, the general manager, or the bookkeeper.

Regarding Cardinal Car City's financial transactions, only Rispoli and his wife were on the signature card at the bank. Rispoli testified, however, that employees sent to the bank with a deposit slip or check to cash encountered no difficulty making deposits or withdrawals and that anyone who purported to have Rispoli's signature could make a withdrawal. It was Rispoli's normal practice to sign blank checks and give them to Gage so that employees could go to an auction or to any other dealer and buy a vehicle. Rispoli further related that the normal procedure was that when a check was issued on the business' account, it would come back to the bank. Rispoli's secretary would then enter it in the journal, and she delivered the records to the accountant. If something was wrong, the accountant would normally call Gage, and if Gage would explain satisfactorily, the inquiry would end. Rispoli never personally examined the books.

Rispoli specifically denied any connection with the repair of Alkazoff's car with stolen parts. Rispoli did not remember when Alkazoff's car was received, but did not recall whether he personally negotiated with Farmer's Insurance Company and did not know whether he showed Alkazoff an estimate from Farmer's Insurance Company for the repairs. Rispoli did not know how long Alkazoff's car was in the shop or whether there was a problem finding parts. According to Rispoli it was the job of the body shop foreman, not Rispoli, to order the parts. Rispoli stated he never directly gave Ba-

kun any instructions on Alkazoff's car, since that was Gage's job, and that he never personally ordered or bought the parts. He did remember Officer Kilroy doing some locksmith work for him, but he denied Kilroy's statement that he asked Kilroy for a blank receipt.

Rispoli testified that he had no knowledge of whether a legitimate receipt was received for the parts put on the car. He never questioned anybody regarding the origin of the parts for the repair of Alkazoff's car. He assumed they were used parts coming from some salvage yard. Rispoli had no knowledge that the receipts for the parts for Alkazoff's Oldsmobile from various salvage companies were bogus, and it was not his job to find out.

In Rispoli's experience as a Chicago police department auto theft detective, it was not unusual to get the same color parts for a car only a year old. No one could tell if sheet metal pieces were stolen, since they were not stamped with a serial number. Rispoli stated that he would not have accepted parts that had been cut up, that Bakun never told him that the parts were stolen, and that Rispoli did not know that they were stolen. Rispoli did not know whether he paid Tad Bakun for the parts on Alkazoff's car. He denied telling Bakun to order stolen parts, but he did remember signing a check for $2,100. At the time he signed the check, it was completely blank as to date, amount and payee; when he signed the check, he signed it in blank and it was not made over to Bakun. Rispoli had not seen any receipt or documentation at the time he signed the check.

Finally, Rispoli denied calling Bakun to tell him the police were looking for him and denied telling him to see his attorney, or that he would pay Bakun's attorney fees.

The Board found that Rispoli had violated Rule 2, impeding the department's efforts or bringing discredit upon the department, by his actions in repairing the Alkazoff Oldsmobile Cutlass with stolen parts. The board also found that Rispoli had violated Rule 2 in retaining or causing to be retained an attorney to procure the release of Alkazoff's Oldsmobile from the custody of the police department without the knowledge or permission of Alkazoff, its owner. Further, the Board found Rispoli guilty of failing to keep records relating to the Alkazoff Oldsmobile. The Board found that Rispoli violated Rule 2 in that he, while assigned to the central auto theft unit and while an owner and shareholder of Cardinal Car City, either knew or should have known that Alkazoff's 1981 Oldsmobile Cutlass was repaired at Cardinal Car City with parts from a stolen 1982 Oldsmobile Cutlass. Moreover, the Board found that Rispoli remembered talking to Lisa Alkazoff and knew or should have known that an improper

act or omission occurred pertaining to the records of the parts and their identification numbers from the Olympic 1982 stolen Oldsmobile. As to Rule 5, failure to perform any duty, the Board found Rispoli guilty of failing to report the delivery and receipt by Cardinal Car City of parts from the stolen 1982 Oldsmobile. The Board found Rispoli not guilty of the charge he violated Rule 14 by making a false report or submitting falsified documents to Sergeant Curran. Based on these findings, the Board found that cause existed for Rispoli's separation and discharge as a police officer for the Chicago police department.

Rispoli filed a petition for administrative review. After arguments of counsel for the parties the trial court affirmed the decision of the Police Board discharging Rispoli as a police officer and denied Rispoli the relief sought in his complaint.

Before us, petitioner, Rispoli urges for reversal that (1) because the evidentiary hearing of his case was by a hearing officer and not by the Police Board, the Police Board did not see and hear the witnesses; and (2) because the record does not affirmatively establish that the Police Board reviewed or read the transcript of the evidentiary hearing or conferred or counseled with the hearing officer, the Police Board's guilty findings and decision to discharge Rispoli were not based on the Board's evaluation of the credibility of the witnesses. Rispoli further contends for reversal that there was insufficient evidence to maintain the guilty findings upon which his discharge from the Chicago police department is predicated. We reject these contentions.

■ A hearing officer is authorized to conduct the evidentiary hearing in lieu of the Police Board or its members or member. (Ill. Rev. Stat. 1985, ch. 24, par. 10.1-18.1; Chicago Mun. Code 1985, ch. 11, par. 11—3.) Rispoli concedes in his brief before this court "that there is no question but that the Board had the right to appoint a hearing officer before the Police Board." Rispoli persuasively urges, however, that the record "show[s] clearly that the hearing officer did not vote with respect to the discharge of petitioner," that the record does not establish that the Police Board counseled or conferred with the hearing officer or reviewed the record of the evidentiary hearing in making its findings and decision.

■ It was held in *Southern Illinois Asphalt Co. v. Environmental Protection Agency* (1973), 15 Ill. App. 3d 66, 80, 303 N.E.2d 606:

> "It might be well to observe that a full and fair hearing to litigants under the due process clause of the constitution requires that *the examiner or referee* who hears the evidence,

where there is a sharp conflict in the testimony, *must in some way participate in the decision or give his conclusions or impressions of such testimony by either written or oral report.* The basis for this is that where weight and credibility is [*sic*] to be given to testimony of witnesses, *the litigants are entitled to have the person who conducts the hearing and sees the witnesses to, at least, have his conclusions and impressions reported to the fact finding body."* (Emphasis added.)

*Starnawski v. License Appeal Comm'n* (1981), 101 Ill. App. 3d 1050, 428 N.E.2d 1102, held that the commission's failure to acknowledge the hearing officer's oral or written report was not a denial of the licensor's constitutional due process rights. Neither *Starnawski* nor *Southern Illinois Asphalt* fully resolves the aforementioned issues raised by Rispoli, *i.e.,* that the record does not establish that the hearing officer participated in the Police Board's decision, or gave his conclusions and impressions from the testimony he heard by an oral or written report to the Board, or that the members of the Police Board read or reviewed the testimony presented to and heard by the hearing officer, or his report. At the conclusion of the evidentiary hearing the hearing officer announced:

"A copy of the transcript will be prepared and given to each member of the Police Board. They will meet in executive session and render a decision on this matter."

The written "Findings and Decision" of the Police Board state, *inter alia*:

"*The Police Board of the City of Chicago, as a result of its INVESTIGATION of the charges, finds and determines that:* ***." (Emphasis added.)

The Board's findings and decision thereafter found and set forth six specific guilty findings that Rispoli violated various stated rules and regulations of the Chicago police department, and also the particular facts and acts committed by Rispoli upon which the guilty findings were based, as alleged in the charges and specifications. These guilty findings, facts and acts are set forth in Appendix A to this opinion. The Board's findings and decisions also specifically found and set forth five not guilty findings, and the particular alleged facts and acts of the charges and specification that Rispoli did not commit. The Board's "Findings and Decision" concluded:

"By reason of the findings of fact that the Respondent is guilty herein, cause exists for the separation and discharge of the Respondent, JOSEPH RISPOLI, Star No. 7470, as a Detective in the Department of Police and from the services of

the City of Chicago.

/S/ _____

William H. Hall

Hearing Officer

DECISION

IT IS HEREBY ORDERED that the Respondent, JOSEPH RISPOLI, be and he is hereby separated and discharged from his position as a Detective in the Department of Police and from the services of the City of Chicago.

DATED AT CHICAGO, COUNTY OF COOK, STATE OF ILLINOIS, THIS 8th DAY OF MAY, A.D., 1986."

The findings and decision were signed by the entire Police Board. The Police Board's findings and decision preliminary recite that "*as a result of its INVESTIGATION of the charges,*" the Board finds and determines, etc. The Board's "Findings and Decision" do not set forth what the *investigation* entailed. The "Board's Findings and Decision" do not state that the Board reviewed or read the transcript of the evidentiary hearing, or that the hearing officer counseled or conferred with the Board or participated in the Board's decision. Significantly, the aforementioned guilty findings are signed exclusively by William H. Hall, the hearing officer, and the guilty findings are not signed or stated to be approved or adopted by the Police Board members. From a diligent search of the record on appeal before us it is uncertain that the Board complied with the aforestated mandate of *Southern Illinois Asphalt, i.e.,* that the hearing officer in some way participated in the Board's decision, or gave his conclusion and impression of the testimony heard by him in a written or oral report to the Board. If the aforementioned findings, signed by the hearing officer, are construed as such a report, it is unclear and uncertain, indeed it does not affirmatively appear that the Board members read, approved or adopted said findings. Rispoli urges that by reason thereof, the Board findings and decision must be vacated and held for naught and that the trial court therefore erred in affirming said findings and decision and they must therefore be reversed.

■ It is clear and certain from the record before us that Rispoli waived the issue in the trial court and that he cannot raise the issue for the first time on appeal. (*Smith v. Ashley* (1975), 29 Ill. App. 3d 932, 332 N.E.2d 143.) Nowhere in Rispoli's "Petition for Administrative Review" in the trial court (set forth in full in Appendix B) did he allege, contend, urge, suggest, infer or complain that the hearing officer did not participate in the Board's decision or did not give his

conclusion and impression of the testimony he heard in a written or oral report to the Board, or that the Board did not adopt or approve the hearing officer's findings, or that the Board did not read or review the testimony and the evidence presented to the hearing officer. Rispoli waived the issue in the trial court, and he cannot rely on it for the first time before this court for reversal. *Smith v. Ashley* (1975), 29 Ill. App. 3d 932, 332 N.E.2d 143.

■■ We next consider Rispoli's contention that the evidence is insufficient to sustain the guilty findings. On review by the trial court of the Board's finding and decision to discharge Rispoli the trial court must first determine whether the Board's findings of fact were contrary to the manifest weight of evidence; and second, the trial court must decide whether the findings of fact constituted a sufficient basis for discharge. *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 550-51, 426 N.E.2d 885.

■■ The findings and conclusions of the Board on questions of fact are to be held *prima facie* true and correct. (*Collura v. Board of Police Commissioners* (1986), 113 Ill. 2d 361, 372, 498 N.E.2d 1145, *Taylor v. Police Board* (1978), 62 Ill. App. 3d 486, 491, 378 N.E.2d 1160.) A trial court, on administrative review, should not reweigh the evidence to determine where the preponderance lies but should limit its inquiry to ascertaining whether the findings and decision of the Board are against the manifest weight of the evidence. (*Collura v. Board of Police Commissioners* (1986), 113 Ill. 2d 361, 372, 498 N.E.2d 1148; *Eastman Kodak Co. v. Fair Employment Practices Comm'n* (1981), 86 Ill. 2d 60, 76, 426 N.E.2d 877; *Davern v. Civil Service Comm'n* (1970), 47 Ill. 2d 469, 471, 269 N.E.2d 713.) If the evidence in the record supports the Board's determination, it should be upheld on review by the trial court. *Fagiano v. Police Board* (1984), 123 Ill. App. 3d 963, 983, 463 N.E.2d 845.

In considering whether the evidence supports the finding of the Chicago Police Board, on review it likewise is not within the province of this reviewing court to weigh the evidence, but rather, it is also the duty of this reviewing court to ascertain if the findings and decision of the Police Board are against the manifest weight of the evidence (*Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 307 N.E.2d 371; *Fagiano v. Police Board* (1984), 123 Ill. App. 3d 963, 463 N.E.2d 845; *Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 352 N.E.2d 389; *Crowell v. Police Board* (1975), 32 Ill. App. 3d 552, 336 N.E.2d 573), and to determine if the Board's findings of fact provide a sufficient basis for the Board's conclusion that cause for discharge

exists. *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.

From our careful and exhaustive review of the record we conclude that the Board's findings are not against the manifest weight of the evidence. The record abundantly establishes that Rispoli was personally involved in the repair of Alkazoff's car, knowingly with stolen parts. It was Rispoli whom Alkazoff called several times about her car. It was Rispoli who, according to Alkazoff, told her it would cost about $2,000 to repair the car. Rispoli also personally spoke with the Farmer's Insurance Company agent, Scott Sura, who testified that he negotiated with Rispoli and gave him the estimate and the $6,400 settlement check. The check was made payable to Lisa Alkazoff and Cardinal Car City and was deposited in Rispoli's business' account. Although Alkazoff's name was endorsed on the back of the check, she testified that she never signed it.

On April 30, 1982, an Oldsmobile was stolen from Olympic Oldsmobile. The following day, May 1, 1982, Rispoli admitted signing a blank check which was ultimately issued to an employee of Cardinal Car City, Tad Bakun, in the amount of $2,100. Cardinal Car City's cash disbursement journal reflected that $2,100 was spent for parts for Alkazoff's Oldsmobile.

After Alkazoff's car was repaired by Rispoli's Cardinal Car City, during the month of July 1982, an attorney contacted Alkazoff about getting her car out of the police pound where it was being held pending investigation because of the stolen parts on it. During the investigation of the stolen auto parts on Alkazoff's car, Rispoli, without Alkazoff's knowledge or permission, contacted the same attorney who contacted Alkazoff, to have her obtain a release of Alkazoff's car from the police auto pound.

Furthermore, it was Rispoli who submitted receipts to Sergeant Curran that were from businesses that did not exist or which had never sold parts to Cardinal Car City. It was Rispoli who also asked Kilroy for a blank receipt.

The evidence clearly shows that Rispoli should have known that an automobile was being repaired in his business establishment with stolen parts. Here, a Chicago police auto theft detective signed blank checks without looking at the receipts, without checking his bank statement and without determining why the receipts showed that diesel parts were being put on a 1981 Oldsmobile with a gasoline engine. Rispoli contacted an attorney to try to get a car he repaired out of the police pound, without ever telling the owner of the car. It is incredible that a Chicago police auto theft detective, in the auto

repair business, would not be suspicious upon receiving almost new automobile salvage parts of exactly the same color, the day after a new car of the same make and color had been stolen. The evidence clearly and convincingly establishes that Rispoli was intimately involved in the illegal activities of his business, or at the very least, he should have known of such illegalities.

Furthermore, Rispoli offered the Board nothing more than a blanket unconvincing denial. He recalled almost nothing about his actions during the relevant period. Rispoli could not recall whether there were problems finding parts for Alkazoff's car, even though the body shop foreman, Bakun, testified that on several occasions he personally went to Rispoli and told him of the difficulty in finding the parts. Rispoli also could not recall whether he negotiated with the Farmer's Insurance Company agent, even though agent Scott Sura testified that he went to Cardinal Car City three or four times and talked to Rispoli about the insurance settlement and to deliver the insurance check which was made out to Alkazoff and Cardinal Car City. Additionally, Rispoli denied other matters which other witnesses directly confirmed. Officer Kilroy testified that Rispoli asked him for a blank receipt, which Rispoli denied. Similarly, Alkazoff testified that Rispoli told her the car would cost $2,000 to repair, and Rispoli denied this also. Given the extensive testimony of the many witnesses, the Board was entitled to disbelieve Rispoli's deficient testimony that he did not know about the use of stolen auto parts on Alkazoff's car.

■ Notwithstanding Rispoli's assertion that Bakun's testimony must be disbelieved, there is no basis on which to reject the credibility judgments made by the Police Board. It is within the exclusive province of the Board, and not the reviewing court, to resolve the conflicts between witnesses' testimony. (*Peterson v. Board of Trustees* (1973), 54 Ill. 2d 260, 296 N.E.2d 721.) It is particularly within the province of the Board to resolve contradictions presented by the evidence. (*Schnulle v. Board of Fire & Police Commissioners* (1974), 16 Ill. App. 3d 812, 30 N.E.2d 906.) The Board relied on the improbability of Rispoli's testimony and quite justifiably found it to be incredulous and unbelievable. We agree with the Board's assessment, and we therefore will not disturb it.

Rispoli further maintains that the Board reached inconsistent findings. He argues that the Board was inconsistent in finding that he did not make a false report when he reported that he did not know that the parts used to repair Alkazoff's car were stolen, and in also finding that he knew or should have known that Alkazoff's car

was repaired with stolen parts. There were multiple charges against petitioner, most of which were not based on Rispoli's alleged false report. There is no basis on which the Board's various findings necessarily preclude each other, particularly the finding that Rispoli should have known the parts were stolen. The charges and the findings were not inextricably interwoven or incapable of separation.

■ We conclude that the Board correctly found that the findings supported the discharge of Rispoli from the Chicago police department. Cause for discharge has been defined as some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and public opinion recognize as good cause for dismissal. (*Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 352 N.E.2d 389.) A single violation of a police regulation may be sufficient to form a basis for the discharge of an officer. (*Moriarity v. Police Board* (1972), 7 Ill. App. 3d 978, 289 N.E.2d 32.) A police board has considerable latitude in determining what constitutes cause for discharge, and its decision will not be reversed unless its findings are unrelated to the requirements of the service, or are so trivial as to be unreasonable. (*Allman v. Police Board* (1986), 140 Ill. App. 3d 1038, 489 N.E.2d 929; *Crowell v. Police Board* (1975), 32 Ill. App. 3d 552, 336 N.E.2d 573.) In the case at bar, Rispoli's conduct was neither trivial nor unrelated to what the public has a right to expect from a police officer.

■ The Board found, and the record supports, that Rispoli knew or should have known that the car entrusted to his business was repaired there with stolen parts. Moreover, the Board found that Rispoli failed to keep the records required by municipal and State law and was responsible for hiring an attorney to procure the release of the auto while it was the subject of a Chicago police department theft investigation. The Board was compelled to conclude that Detective Rispoli had brought discredit upon the Chicago police department.

We affirm the trial court's order which affirmed the Board's finding and decision and discharge of petitioner Rispoli as a police officer of the Chicago police department.

Affirmed.

MURRAY, P.J., and COCCIA, J., concur.